RAINKO ·v. WEBSTER-EISENLOHR, INC.

1. WORKMEN'S COMPENSATION—FINDING OF DEPARTMENT—PROXIMATE CAUSE—EVIDENCE—CIGAR FACTORY WORKER—MASS HYSTERIA.

    Finding of department of labor and industry that plaintiff, a cigar roller, sustained an accidental injury arising out of and in the course of her employment and resulting in her incapacity to do the work in which she was then engaged was sustained by evidence showing that she and some 30 other co-employees similarly employed on the second floor of cigar factory suffered a mass hysteria caused by an odor of gasoline vapor of less than toxic concentration emanating from the basement.

2. SAME—EVIDENCE OF INJURY.

    It is not necessary to establish physical injury resulting in outward evidence of violence or trauma to justify an award of compensation.

Appeal from Department of Labor and Industry. Submitted June 15, 1943. (Docket No. 1, Calendar No. 42,268.) Decided September 7, 1943.

Elizabeth Rainko presented her claim against Webster-Eisenlohr, Inc., employer, and Zurich Insurance Company, insurer, for injuries sustained while in its employ. Award to plaintiff. Defendants appeal. Affirmed.

*Dann & Atlas,* for plaintiff.

*Kerr, Lacey & Scroggie,* for defendants.

NORTH, J. Plaintiff, a skilled worker in a cigar factory, was awarded compensation by the department of labor and industry. The employer and the carrier of its insurance have appealed. The record sustains in all its material aspects the finding of the department from which we quote:

"The plaintiff, Elizabeth Rainko, was employed by defendant, Webster-Eisenlohr, Inc., as a cigar roller. She worked as a piece worker, earning on the average of $4.05 per day. Her particular place of work was located on the second floor of defendant's plant. On February 20, 1941, she came to work as usual, apparently in normal health for a woman of her age. Shortly after coming to work, she noticed a girl faint, then another girl fainted and a third and fourth girl fainted, all of whom were working in the same area as the plaintiff. Then she noticed an odor like gasoline and complained of it to her foreman. Later she noticed a sweet odor and soon she felt dizzy, had a headache, was nauseated and tears came out of her eyes. She went to the ladies rest room where she collapsed. Within a period of approximately half an hour some 30 girls had collapsed, all of whom were working within the same area on the second floor of defendant's plant. Most of these girls were taken to Receiving Hospital where tests for the presence of carbon monoxide gas and hydrogen cyanide gas were found to be

negative. Plaintiff was not one of the girls taken to the hospital but was taken home. Dr. Samson S. Wittenberg, her family physician, was called and found her in a weak, pale condition; her pulse was rapid and she complained of headache and dizziness and had vomited. He saw her again on February 21st, 22d and 26th and on March 3d and 8th. A few days after February 20th, she developed a rash. She was still under the care of Dr. Wittenberg at the time of the hearing before the deputy commissioner. Plaintiff returned to work on March 10, 1941, her foreman having sent for her, and she worked until April 18, 1941, when, according to her testimony, she was unable to continue with her work because of the various symptoms which had persisted since the accident. She has not worked since April 18, 1941.

"Various investigations were conducted at defendant's plant after the occurrence of February 20, 1941. Dr. William G. Fredrick, an industrial hygienist of the department of health for the city of Detroit, after a comprehensive investigation, concluded the collapse of the employees at defendant's plant on February 20, 1941, was caused by mass hysteria, actuated by an odor of gasoline from a small amount of gasoline vapor in the area where the girls worked on the second floor of the plant. His conclusions were based on the fact that an employee had poured some gasoline into a cuspidor in order to loosen some debris and had placed it in the basement immediately in front of a door that led into a stair well and that the temperature in the basement being high, had caused the vapor from the gasoline to go upwards in the stair well to the second floor of the building. Though it is claimed the collapse of the employees was caused by either carbon monoxide or hydrogen cyanide gas, the record is barren of any evidence to support such a claim, either inferentially or directly.

"We find, based on Dr. Fredrick's testimony, the occurrence in which plaintiff was involved while working for defendant employer on February 20, 1941, was a mass hysteria, caused by an odor from gasoline vapor of less than toxic concentration. We further find that occurrence was an unusual, fortuitous and unexpected event and was therefore an accident, as that term has been defined by our Court in various decisions too well known for citation. We find the accident arose out of and in the course of plaintiff's employment. We also find that plaintiff's wage loss since April 18, 1941, was caused by the accident of February 20, 1941. This finding is based on the fact that plaintiff was symptom-free and worked with no difficulty prior to the accident and her present complaints date from the accident and further on the testimony of Dr. Wittenberg, her family physician."

As bearing upon plaintiff's impaired physical condition, Dr. Wittenberg in part testified:

"I was their family doctor. I have known this woman for a long time and I have tried to rule out everything else, gall bladder, intestinal trouble of organic nature, stomach trouble of organic nature, and I have not been able to find any other cause, nor had she any of these complaints prior to this incident; and I believe whatever it was that started this gas, or what she was subjected to, irritation, probably affects her through the central nervous system; that it must have had an effect on the brain and the spinal cord, because her complaints, at the present time, are along that line, and, possibly, some degeneration of certain parts of the brain or spinal cord, nerve degeneration. * * * I have seen her vomit; I have seen her being so dizzy that she could not stand up straight, and she had this rash, which came on, I believe, a day or two after the accident, which I saw, and then she had the difference in the

reflexes; they were, at first, hyperactive, and lately, they are less active than normal; other than that, I haven't—and she had this epigastric tenderness; that is, a tenderness and a pain over the pit of the stomach, and the anemia set in, and she had lost some weight, which, gradually, she has regained. But she still feels weak."

Notwithstanding appellants' contention to the contrary, we are satisfied that the record contains ample testimony in support of the department's finding that plaintiff did sustain an accidental injury which arose out of and in the course of her employment.

What constitutes an accidental injury within the meaning of the workmen's compensation statute has been so definitely stated in former decisions as to obviate the necessity of repetition. See *Adams* v. *Acme White Lead & Color Works*, 182 Mich. 157 (L. R. A. 1916 A, 283, 6 N. C. C. A. 482, Ann. Cas. 1916 D, 689); and *Twork* v. *Munising Paper Co.*, 275 Mich. 174. It is not necessary to establish physical injury (resulting in) outward evidence of violence or trauma to justify an award of compensation. In *La Veck* v. *Parke, Davis & Co.*, 190 Mich. 604 (L. R. A. 1916 D, 1277), an award of compensation was affirmed notwithstanding it was stated in the opinion, "No visible accident occurred and no event causing external violence to applicant's body."

Appellants further urge that although plaintiff may have suffered an accidental injury which arose out of and in the course of her employment and she is now suffering disability, still there is no "competent proof" of a causal relation between the injury and plaintiff's disability. Notwithstanding one of defendants' witnesses, Dr. Fredrick, who classified himself as an "industrial hygienist" and who made a detailed investigation the next day after the acci-

dent, attributed the experience of plaintiff and some 30 other persons similarly employed to "mass hysteria," stating, "It is not necessary that you have a toxic gas present in order to have a group of workers collapse;" and also notwithstanding testimony that plaintiff to some extent had a gall bladder affliction, still there are many circumstances disclosed by the record tending to sustain the department's finding that the so-called mass hysteria was "caused by an odor from gasoline vapor of less than toxic concentration," and that the "occurrence was an unusual, fortuitous and unexpected event and was therefore an accident." In plaintiff's application for adjustment of compensation, the basis of her claim is stated as follows:

"Plaintiff was exposed to, absorbed and was overcome by an unusual concentration and/or escaping gas chemicals and/or fumes, causing injury. The injury is to her eyes, stomach, head, lungs, heart, arterial and nervous system."

As the result of the unfortunate experience plaintiff had in the course of her employment, she suffered an injury which incapacitated her for the work in which she was engaged. Under such a record, she was entitled to compensation; and the award of the department must be affirmed. Costs to appellee.

BOYLES, C. J., and CHANDLER, STARR, WIEST, BUTZEL, BUSHNELL, and SHARPE, JJ., concurred.