KUSIAK *v.* GRAND RAPIDS BRASS COMPANY.

Workmen's Compensation—Occupational Dermatitis—Evidence —Proximate Cause.

> Occupational dermatitis of employee, afflicted with an infection, that was aggravated by fumes and excessive heat while he was engaged in hardware degreasing operation at tank of trichlorethelyne heated to 190°, necessitating considerable medical treatment, was properly found a basis for awarding workmen's compensation where testimony showed the dermatitis was due to causes and conditions which were characteristic of and peculiar to plaintiff's employment, developed only after exposure and cleared up after removal from exposure.

---

References for Points in Headnotes

58 Am Jur, Workmen's Compensation, §§ 246, 278.

Workmen's compensation: Injury from fumes or gasses as accident or occupational disease.   6 ALR 1466; 23 ALR 335; 90 ALR 619.

Workmen's compensation: Injury or death to which pre-existing physical condition of employee causes or contributes.   19 ALR 95; 28 ALR 204; 60 ALR 1299.

Lead or other occupational poisoning as within workmen's compensation act.   29 ALR 691; 44 ALR 371.

Condition of bodily organs due to particles of dust or other material incident to work as compensable within workmen's compensation act not covering occupational diseases.   62 ALR 1460; 97 ALR 1412.

Disease resulting from insanitary conditions not peculiar to kind of employment as occupational disease within workmen's compensation act.   105 ALR 1411.

Appeal from Workmen's Compensation Commission. Submitted October 13, 1949. (Docket No. 16, Calendar No. 44,380.) Decided January 9, 1950.

Joseph Kusiak presented his claim for compensation against Grand Rapids Brass Company, employer, and Royal Indemnity Company, insurer, for occupational dermatitis. Award to plaintiff. Defendants appeal. Affirmed.

*Joseph E. Arsulowicz,* for plaintiff.

*Alexander, Cholette, Buchanan, Perkins & Conklin* (*Edward D. Wells,* of counsel), for defendants.

Boyles, C. J. The workmen's compensation commission granted plaintiff compensation for occupational dermatitis and the defendant employer and its insurance carrier appeal. Two questions are depended upon for reversal.

Plaintiff started working for the defendant employer in 1944. About a year and a half later he was put to work at what is called the "degreaser tank." His work was described as follows:

"This operation that he was talking about consisted of a fellow on the floor putting the hardware in the basket, in wire baskets, which naturally being wire, they don't hold any liquid, and they set them up on the platform, and he picks them up and fastens them on a hoist, and lets them down into the tank and holds them there and then hauls them up out of the tank and pulls them over from the tank and lets them down, and unfastens them from the hook and puts another basket on, and naturally when you pick them out of the tank, there is a certain amount of liquid that comes up with them."

The tank was located on a platform 3 or 4 feet above the floor and was 5½ or 6 feet in height. It

contained 3 parts or tanks, in each of which was a chemical called trichlorethelyne. The liquid in the first tank was heated up to its boiling point, about 190 degrees. The liquid in the next tank was around 150 degrees, and then the next tank was "mostly vapor * * * which boils over into the other tank." A workman doing this particular work was subjected to fumes and excessive heat. "Where the operator's feet would be today it was 100 degrees, or 101, and where his face would be was 87 degrees." Sometimes the employer had cardboard or paper placed in the bottom of the baskets to prevent small pieces of metal parts from falling through. The liquid was hot and dripped from the baskets.

After being employed on this job for about 4 months plaintiff noticed "bubbles" on both of his feet. The condition progressed until he became disabled in January, 1947. He returned to work in April, 1947, after having had considerable medical care and several days' confinement in St. Mary's hospital. Contrary to the advice of the attending physician the defendant employer again put him back to work on the degreaser tank. The "rash" spread to other parts of his body, to his hands and face. He again became disabled from the same condition and again required considerable medical treatment and confinement for approximately 6 weeks in a convalescent home.

The commission found that plaintiff's disability arose out of and in the course of his employment and was compensable. There was medical testimony that heat and perspiration had a definite effect on plaintiff's infection and that it was irritated by the chemical fumes. There was testimony to the effect that the dermatitis was due to causes and conditions which were characteristic of and peculiar to plaintiff's employment. A witness who had worked in the

plating room for the defendant employer for 19 years testified:

"*Q.* And do you know this particular degreasing job?

"*A.* Yes, I do.

"*Q.* And were there other people employed besides Mr. Kusiak on the degreasing work?

"*A.* Lots of them.

"*Q.* Were there other people beside Mr. Kusiak who had dermatitis?

"*A.* Dozens of them."

The commission found:

"In all probability the condition would never have become disabling except for the conditions of the plaintiff's employment. This is well indicated by the history of the disability which always came on following the exposure on the degreaser tank and then cleared up following his removal from such exposure."

There was testimony to support the finding of the commission, and we are in accord with the award. See *Flanigan* v. *Reo Motors, Inc.,* 300 Mich 359; *Mills* v. *Detroit Tuberculosis Sanitarium,* 323 Mich 200 .

Reid, North, Dethmers, Butzel, Carr, Bushnell, and Sharpe, JJ., concurred.