### BIRD v. PENNFIELD AGRICULTURAL SCHOOL DISTRICT NO. 1.

WORKMEN'S COMPENSATION—SCHOOLTEACHER—PAINT IN CLASSROOM —PROXIMATE CAUSE OF DISABILITY.

Finding of workmen's compensation appeal board that disability of schoolteacher was due to certain paint used in schoolroom is affirmed under the occupational disease amendment of the workmen's compensation act; the Court being unanimous in holding that testimony supported finding her disability arose out of and in the course of her employment, but DETHMERS, C. J., and SHARPE, KELLY, and CARR, JJ., holding that the fact that plaintiff was unusually susceptible to the irritant was not material (CL 1948, § 417.1 et seq.).

Appeal from Workmen's Compensation Appeal Board.  Submitted January 15, 1957.  (Docket No. 76, Calendar No. 46,895.)  Decided June 10, 1957.

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation §§ 245, 246, 248, 253.

Vera C. Bird filed her claim against Pennfield Agricultural School District No. 1, employer, and Auto-Owners Insurance Company, insurer, for compensation because of allergic reaction to paint in schoolroom. Award to plaintiff. Defendants appeal. Affirmed.

*Wunsch & Coleman (Creighton R. Coleman,* of counsel), for plaintiff.

*Warner & Hart,* for defendants.

EDWARDS, J. Plaintiff Vera C. Bird was a schoolteacher in the Bee Tree school. She had taught in the same school system for 7 years prior to January, 1953. In that month the schoolroom ceiling of the Bee Tree school was painted and Mrs. Bird began to suffer from allergic symptoms which subsequently led to several weeks' absence from her teaching job and consequent medical treatment. On several occasions when she returned to her employment the symptoms recurred until the ceiling complained of was covered over by an oil base paint. A similar recurrence of symptoms followed the painting of the ceilings of hallways and toilets the following fall until a similar measure was taken.

The record indicates clearly that the odor of the paint which was the subject of Mrs. Bird's complaints was strong enough to be recalled vividly by the superintendent of the school, to have been associated with complaints from the school children and the custodians of the building, and to have been the subject of a Bee Tree School Mothers' Club discussion.

Plaintiff filed application for hearing and adjustment of claim before the workmen's compensation commission under date of December 17, 1953. After hearing before a referee wherein her claim was de-

nied, the appeal board of the workmen's compensation department granted compensation for 5 weeks of lost time and $1,963.84 hospitalization and medical expenses. The opinion of the appeal board of the workmen's compensation department summarizes its findings of fact on the problem of causal relationship as follows:

"The plaintiff's medical testimony indicates that her allergic condition could have been associated with the paint. Her testimony came from her treating physicians who eliminated other possibilities and who felt that such relationship was probable, taking into consideration her history of complaints beginning with exposure to the paint and becoming reactivated whenever she returned to such exposure. The defendant presents the testimony of Dr. Curtis of the University Hospital at Ann Arbor. He examined her on February 13, 1954, and the only particular inconsistency between his testimony and that of the plaintiff's doctors is that of believing her continuing complaints were related entirely to the cortisone therapy and that all indications of an allergic disturbance had disappeared. Plaintiff's doctors had treated her with cortisone for her allergic disturbance. It seems immaterial to us whether or not her continuing complaints are due to the continuance of the allergy or to treatment given for the allergy. The record further indicates that the plaintiff had been exposed to fresh paint off and on during the course of her life and that she had never before suffered any ill effects from such exposure. Neither did she suffer any ill effects from the fresh paint that was used to cover up the offending paint.

"We believe the record clearly establishes that plaintiff's allergic disability was due to the offending paint used in her schoolroom."

The appeal board went on to hold that the injury was compensable under either part 2 or part 7 of

the workmen's compensation act. On the latter point, the appeal board said as follows:

"Plaintiff's injury was due to daily exposure to an irritant associated with her employment. The exposure was not common to the public as the paint was obviously not common paint. She was, therefore, subjected to a hazard not found in general employment or ordinary living. The application of part 7 of the act to cases of contact dermatitis has never been questioned. The only difference between those cases and this case is in the form and nature of the allergic manifestation. Plaintiff's injury and disability was due to causes and conditions characteristic of and peculiar to the business of the defendant and is therefore compensable under part 7 as an occupational disease."

On appeal to this Court, the only problem of moment appears to be whether there is evidence in the record upon which the findings of fact of the appeal board quoted above could properly be based. In the presence of such evidence, the findings of fact of the appeal board are conclusive. CL 1948, § 413.12 (Stat Ann 1950 Rev § 17.186); *Hayes* v. *Detroit Steel Casting Co.*, 328 Mich 609; *Alexander* v. *Covel Manfg. Co.*, 336 Mich 140.

When seen by her doctor for treatment her condition was found to be as follows, from his testimony at the hearing:

"*A*. She came in for examination, having been referred by Dr. Walters in this city. At that time we found her face swollen, her eyelids swollen, she had increased hyperemia of the conjunctiva. Tongue was swollen and red, gums swollen, and so forth, which are allergic reaction after a rash over the body, which could be described as herpes, or an allergic reaction.

"*Q.* Now through treating her and observing her when she was in the hospital did you make a diagnosis as to what caused this condition?

"*A.* I made a diagnosis of allergic reaction."

As a result of that interview, plaintiff was hospitalized at Battle Creek Sanitarium and hospital under the care of Dr. James R. Jeffries, the hospital's medical director, who testified as follows on the problem of causal relationship:

"*Q.* You say you ruled out food allergies as a probable cause and you ruled out infection, is that correct?

"*A.* Attempted to, with blood tests and other things.

"*Q.* Then what could have accounted for this?

"*A.* From her history it would lead you to believe it must be due to certain allergies which come as a result of certain places where she had been. According to her history these occurred much more currently when she was in the school.

"*Q.* Do you feel that allergy, or the condition she was suffering from, could have been related to something within the school?

"*A.* Yes.

"*Q.* Were you able to pinpoint it any further?

"*A.* Nothing definite, except according to history.

"*Q.* Well, from the history?

"*A.* From her history she stated that new paint had been applied within her room in that school, and these symptoms developed shortly after she went in the room where this paint was applied.

"*Q.* Do you feel there could be a relationship there?

"*A.* I think it is very possible certain solvents in paint might cause such reaction.

"*Q.* Did you say 'very possible'—would you go further than that?

"*A.* Yes, I think it is very probable it can."

We do not believe that under the testimony quoted above the findings of the appeal board were speculative in nature.

This injury involved recurrent contact with an irritant. This Court has repeatedly held compensable disabling injuries arising from contact with irritants encountered in the course of employment. Where the exposure to the irritant was represented by a single episode, recovery has generally been allowed under part 2. CL 1948, § 412.1 *et seq.* (Stat Ann 1950 Rev § 17.151 *et seq.*); *Sherman* v. *Winkelman Bros. Apparel, Inc.*, 262 Mich 214; *Rainko* v. *Webster-Eisenlohr, Inc.*, 306 Mich 328.

Where, as here, the history presented was one of recurrent exposure and recurrent disabling symptoms, generally Michigan has allowed recovery under part 7 pertaining to occupational disease. *Ramsey* v. *Bendix Aviation Corporation*, 314 Mich 169 (19 NCCA NS 590); *Kusiak* v. *Grand Rapids Brass Company*, 326 Mich 559; *Nay* v. *King-Seeley Corporation*, 339 Mich 140 (4 NCCA3d 526); 31 Mich State Bar Journal (December), p 19.

This seems to accord with the general tendency in other jurisdictions. 4 NCCA3d 530, Allergy as Compensable Occupational Disease or Accidental Injury, p 532.

It is obvious from this record that plaintiff was exposed to an irritant in her place of employment, to which the general public was not exposed. As the appeal board found, this was no common paint. At the time of her disability the exposure to this irritant was characteristic of and peculiar to the business of her employer, Pennfield Agricultural School District No. 1. The testimony supports the finding that her disability arose out of and in the course of her employment.

We approve the award of the appeal board under part 7 of the workmen's compensation act, CL 1948,

§ 417.1 *et seq.* (Stat Ann 1950 Rev § 17.220 *et seq.*).
Costs to appellee.

Smith, Voelker, and Black, JJ., concurred with
Edwards, J.

Carr, J. (*concurring*). The finding of the appeal
board that plaintiff suffered a disability resulting
from a condition under which her services were
rendered to defendant was supported by testimony.
The fact that she was unusually susceptible to the
irritant is not material. The reasons deemed con-
trolling in *Mills* v. *Detroit Tuberculosis Sanitarium,*
323 Mich 200, are applicable here.

I concur in affirmance of the award of compensa-
tion under part 7 of the workmen's compensation
act.

Dethmers, C. J., and Sharpe and Kelly, JJ., con-
curred with Carr, J.