VANDERBEE v KNAPE & VOGT MANUFACTURING COMPANY

1. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—STATUTES.

   It was the intention of the Legislature to allow workmen's compensation for disability resulting from a disease contracted in the course of the employment and brought about by the nature of such employment and the conditions under which it was carried on (MCLA 417.1[c]).

2. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—TUBERCULOSIS—CAUSATION.

   A plaintiff who had shown that his contracting of tuberculosis arose out of and in the course of his employment because of his required close personal contact during the workday with a fellow employee who had tuberculosis and from whom he received on-the-job training where the nature of his employment required mutual handling of the same tools and repeated conversations at close range at abnormally loud voice levels because of the din of the press room had established the requisite causal and temporal connections between employment and disability to qualify for benefits under a former Workmen's Compensation Act provision (MCLA 417.1[c]).

3. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE.

   A disease or injury need not be one that originates exclusively from the particular kind of employment in which the employee is engaged to qualify the employee for benefits under a former provision of the Workmen's Compensation Act, but rather the conditions of the employment must result in a hazard which distinguishes it in character from the general run of occupations (MCLA 417.1[c]).

4. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASE—PECULIAR CONDITIONS.

   A plaintiff employee who was required to have personal contact with a fellow employee carrying tuberculosis bacteria because of the peculiar or unusual conditions of his training program and the din of the press room in which he worked was entitled

REFERENCE FOR POINTS IN HEADNOTES
[1–4] 58 Am Jur, Workmen's Compensation § 246.

to an award of workmen's compensation benefits under a former statute even though the employment conditions were not necessarily peculiar to the tool and die business generally; it is sufficient that the conditions were peculiar to plaintiff's work (MCLA 417.1[c]).

Appeal from Workmen's Compensation Appeal Board. Submitted Division 3 April 5, 1973, at Grand Rapids. (Docket No. 14598.) Decided July 24, 1973.

Jay Vanderbee presented his claim for workmen's compensation benefits against his employer, Knape and Vogt Manufacturing Company, and Liberty Mutual Insurance Company. Benefits denied. Plaintiff appeals by leave granted. Reversed.

*Marcus, McCroskey, Libner, Reamon & Williams,* for plaintiff.

*Smith, Haughey, Rice, Roegge & Gould,* for defendants.

Before: Holbrook, P. J., and T. M. Burns and Churchill,* JJ.

Holbrook, P. J. This is an appeal from a decision by the Workmen's Compensation Appeal Board. The essential facts are not in dispute. Plaintiff started working as a tool and die maker for the defendant manufacturing company on September 16, 1963. At that time he was in good health. When initially employed plaintiff was instructed to learn the job operation from employee Louis Hoogewind. The plaintiff and Hoogewind exchanged tools and were in close personal contact because of work together on certain dies. While in the press room the noise was of such high volume

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

that the two would have to shout to each other with their heads about six inches to one foot apart in order to do their work. Plaintiff and Hoogewind also worked together in the tool room, but since the noise level was lower their conversations were held from greater distances than in the press room. Hoogewind was ill with a cough during 1963 and 1964 but continued to work. On April 16, 1964, he entered the hospital suffering from tuberculosis. In May 1964 plaintiff had his seventh tuberculin test since 1946, but for the first time the test was positive. He was hospitalized July 30, 1964, with tuberculosis and returned to part-time work May 26, 1965. The hearing referee denied plaintiff's claim for compensation, stating that "[P]laintiff's disability is not due to causes and conditions characteristic of and peculiar to his employment by defendant". The appeal board affirmed in a 4 to 3 vote, and plaintiff's petition for leave to appeal was granted by this Court.

Defendant has claimed that our judgment is foreclosed since there is no issue of law for our consideration, and we are not permitted to review factual findings as long as there is any evidence that might sustain them. MCLA 418.861; MSA 17.237(861); *Couch v Saginaw Malleable Iron,* 42 Mich App 223, 225; 201 NW2d 681, 682 (1972). However, both the majority and minority opinions on the appeal board agreed that the plaintiff contracted tuberculosis from Hoogewind in the course of the plaintiff's training by Hoogewind. Therefore, the dispute centers on the appropriate application of the correct legal standard to the recognized facts and we may review such application. *Couch, supra.*

Plaintiff states the basic issue thus: "Where a disabling disease is contracted from a co-employee

because of the conditions of the employment requiring that the two put their heads together and shout to be heard above the roar of the press room, is the disability compensable?" Three members of the appeal board answered "yes", arguing compensation was due pursuant to MCLA 412.1; MSA 17.151,[1] applying part II of the Workmen's Compensation Act dealing with single event injuries. The majority of the board answered "no", applying part VII of the act dealing with occupational diseases. MCLA 417.1(c); MSA 17.220(c).[2] Plaintiff claims that compensation could and should be awarded to him under either part of the act. We find that plaintiff should have been granted recovery under part VII of the Workmen's Compensation Act, and therefore need not decide whether recovery could be based on part II also.

The test of what constitutes a part VII disability

[1] The statute (repealed and now covered by MCLA 418.301; MSA 17.237[301]) reads:

"An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is at the time of such injury subject to the provisions of this act, shall be paid compensation in the manner and to the extent hereinafter provided, or in case of his death resulting from such injuries such compensation shall be paid to his dependents as hereinafter defined. The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in the case of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death.

"Every employee going to or from his work while on the premises where his work is to be performed, and within a reasonable time before and after his working hours, shall be presumed to be in the course of his employment."

[2] The statute (repealed and now covered by MCLA 418.401; MSA 17.237[401]) reads:

" 'Personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable. A hernia to be compensable must be clearly recent in origin and result from a strain arising out of and in the course of the employment and promptly reported to the employer."

is derived from MCLA 417.1(c); MSA 17.220(c) and has been interpreted as a two-pronged test: "Construing the provisions * * * in the light of the general purpose of the act, we think it was the intention of the Legislature to allow compensation for disability resulting from a disease *contracted in the course of the employment* and *brought about by the nature of such employment and the conditions under which it was carried on".* (Emphasis supplied.) *Mills v Detroit TB Sanitarium,* 323 Mich 200, 212; 35 NW2d 239, 244 (1948). Here plaintiff has shown, and indeed the Workmen's Compensation Appeal Board has explicitly recognized, that plaintiff's disease arose out of and in the course of his employment because of the required close personal contact with Hoogewind during the workday. The requisite causal and temporal connections between employment and the disability are thus established. *Pearce v Michigan Home & Training School,* 231 Mich 536, 537; 204 NW 699, 700 (1925). (For claims arising after March 12, 1970, the law no longer requires the establishment of a proximate causal connection between the employment and the injury. *Whetro v Awkerman,* 383 Mich 235; 174 NW2d 783 [1970]).

Whether the plaintiff's tuberculosis was "brought about by the nature of such employment" is a question also easily answered. Plaintiff's own unrebutted testimony amply describes the situation:

*"Q. [Mr. Williams, plaintiff's attorney]:* Did the conditions at the plant permit you to talk to him as you and I are talking here today, at a distance of some five to six feet away?

*"A.* In the tool room; but not in the press room.

*"Q.* What about the press room requiring closer contact?

"*A.* Yes, because of competitive noise, we had to have closer, much closer contact within, I'd say six inches or so, of each other.

"*Q.* That is your faces were six inches or thereabouts apart?

"*A.* Yes, when we was seeing what had to come out and what had to go in, and how this was taken out and this particular section was put in, yes.

"*Q.* And when you were at a distance of six inches or a foot apart in the press room, could you easily understand each other?

"*A.* Yes, we could hear.

"*Q.* And when you were talking at that distance were you speaking in a conversation tone such as you are now, or louder than that?

"*A.* Louder, I'd say.

"*Q.* Because of the noise?

"*A.* Because of the excessive noise.

"*Q.* Now over that four-to-five week period can you tell me how frequently you and Mr. Hoogewind would have these close-together conversations, say, in a given day?

"*A.* Oh, two or three times a day, maybe.

"*Q.* And those conversations would be for what approximate length of time during this first four to five weeks?

"*A.* Oh, they'd vary, two to three minutes, five minutes.

\* \* \*

"*Q.* Well, explain that, please?

"*A.* Well, I already did. While we were changing the dies in the press room, taking them out and then we worked close together because he was instructing me how to do that particular operation.

"*Q.* And what do you mean by working close together?

"*A.* Well, he was explaining to me which section had to be removed, how it was removed, and which section went in and how it went in, which punches had to be pulled and which punches were not pulled.

"*Q.* Now have you already covered in your description

how close you had your heads together? Have you covered that, or would this be in addition?

"*A.* No, I already covered that."

The controlling opinion of the appeal board found:

"The proofs presented here do not disclose causes and conditions which can be said were characteristic of and peculiar to the employment of defendant, and from which it can reasonably be concluded that plaintiff was exposed to the contraction of the disease of tuberculosis in a wholly different manner and to a far greater degree than is the public in general. Neither do the proofs support a holding that the disablement is a fortuitous result of the employment conditions."

The board has misinterpreted the requirements of the statute for finding a part VII disablement. In *Mills, supra,* it was the *nature* of the employment that was the focal point of analysis. Under this rubric, then, it can be easily seen that the nature of the employment existent in this case, *i.e.,* work between Hoogewind and plaintiff that required mutual handling of the same tools and repeated conversations at close range at abnormally loud voice levels because of the din of the press room, caused the contraction of tuberculosis by plaintiff. While in *Mills* the nature of the employment, work as a dishwasher in a tuberculosis hospital, was obviously more likely to result in the contraction of a communicable disease, it was not the case in *Bird v Pennfield Agricultural School Dist No 1,* 348 Mich 663, 668; 83 NW2d 594, 597 (1957). There a dormant allergy was awakened by paint in a schoolroom in which the plaintiff was required to teach. In allowing the claimant recovery under part VII of the Workmen's Compensation Act, the Court held:

"It is obvious from this record that plaintiff was

exposed to an irritant in her place of employment, to which the general public was not exposed. As the appeal board found, this was no common paint. At the time of her disability the exposure to this irritant was characteristic of and peculiar to the business of her employer, Pennfield Agricultural School District No. 1. The testimony supports the finding that her disability arose out of and in the course of her employment."

See, also, *Smith v Lawrence Baking Co,* 370 Mich 169; 121 NW2d 684 (1963), where a bakery employee was given compensation for back problems caused by bending, twisting, and picking things up as part of his job. The rule is not that the disease or injury must be one that originates exclusively from the particular kind of employment in which the employee is engaged, but rather that the conditions of the employment must result in a hazard which distinguishes it in character from the general run of occupations. *Underwood v Campbell, Wyant & Cannon Foundry Co,* 329 Mich 273; 45 NW2d 286 (1951). These "conditions" existed in a schoolroom in *Bird, supra,* a bakery in *Smith, supra,* and a foundry in *Underwood, supra,* even though it can hardly be said that exposure to paint as in *Bird,* or back-bending work in *Smith* and *Underwood* are especially peculiar hazards to the employments in question. Similarly, plaintiff here was required to have personal contact with a person carrying tuberculosis bacteria because of the peculiar or unusual conditions of his training program and the din of the press room. Though these conditions are not necessarily peculiar to the tool and die business in general, they were peculiar to plaintiff's work, and this is sufficient to justify an award of compensation to plaintiff under part VII of the Workmen's Compensation Act. The hearing referee and the majority of the appeal board ignored the unrebutted evidence of the pecu-

liar nature of plaintiff's job that resulted in close contact with a tuberculosis victim, and thus erroneously concluded that there could be no recovery under part VII of the Workmen's Compensation Act.

Reversed. An entry of an award consistent with the minority opinion of the Workmen's Compensation Appeal Board is hereby ordered. Costs to plaintiff.

All concurred.