WHITT *v.* BRUNSWICK-BALKE-COLLENDER COMPANY.

1. WORKMEN'S COMPENSATION—DUST DISEASES—STATUTORY MAXIMUM—CONSTITUTIONAL LAW.

   The imposition of a maximum limit of $10,500 as to amount of workmen's compensation payable for silicosis and dust diseases did not effect an unreasonable classification, or a denial of the equal protection of the laws (CLS 1961, § 417.4).

2. SAME—FINDING OF WORKMEN'S COMPENSATION APPEAL BOARD—EVIDENCE—EXPOSURE TO DUST.

   Finding of workmen's compensation appeal board that plaintiff's disability from pulmonary emphysema was caused by his exposure to dust, being supported by the record, is binding on the Court of Appeals (CL 1948, § 413.12).

3. WORDS AND PHRASES—SILICA.
   Silica is silicon-dioxide, chemical formula $SiO_2$.

4. WORKMEN'S COMPENSATION—SILICOSIS AND OTHER DUST DISEASES—STATUTORY MAXIMUM—PULMONARY EMPHYSEMA.

   The term *silicosis and other dust diseases,* as used in provision of workmen's compensation act limiting maximum amount of recovery of compensation by an employee so afflicted, embraces pulmonary emphysema resulting from the inhalation of dusts containing calcium carbonate, aluminum oxide, and various forms of silicates (CLS 1961, § 417.4).

Appeal from Workmen's Compensation Appeal Board. Submitted Division 3 June 14, 1965, at Grand Rapids. (Docket No. 103.) Decided September 20, 1965. Leave to appeal denied by Supreme Court January 6, 1966. See 377 Mich 694.

REFERENCES FOR POINTS IN HEADNOTES
[1, 4] 58 Am Jur, Workmen's Compensation § 13 *et seq.*
[2] 58 Am Jur, Workmen's Compensation § 530.

Theodore Whitt presented his claim for workmen's compensation for pulmonary emphysema against Brunswick-Balke-Collender Company and Zurich Insurance Company. Appeal board limited plaintiff's recovery to the statutory maximum for silicosis and other dust disease. Plaintiff appeals, challenging the use of the statutory limitation. Affirmed.

*Marcus, McCroskey, Libner, Reamon, Williams & Dilley (Vernon D. Kortering, of counsel), for plaintiff.*

*Cholette, Perkins & Buchanan (Edward D. Wells, of counsel), for defendants.*

McGREGOR, J. Plaintiff brings this appeal from an order of the workmen's compensation appeal board, dated April 23, 1964, which limited his recovery for a permanent disability (pulmonary emphysema) arising out of and in the course of his employment with the defendant-employer, to the $10,500 maximum amount specified in CLS 1961, § 417.4 (Stat Ann 1960 Rev § 17.223). First, plaintiff attacks the constitutionality of the $10,500 limitation. This question has been decided adversely to plaintiff's position. *McDaniel v. Campbell, Wyant & Cannon Foundry* (1962), 367 Mich 356. Next, plaintiff contends that the record does not support the finding of the appeal board that his disability was caused by dust, and thirdly, that even if his injury were caused by dust, the material to which he was exposed was not the type intended by the statutory phrase "silicosis or other dust disease".

Plaintiff performed numerous tasks for the defendant Brunswick-Balke-Collender Company between November, 1958, and June, 1960, when he left defendant's employment. Plaintiff was first em-

ployed in November, 1958, as a plastic press operator and then was transferred to resin-mixer, in December, 1958. On July 9, 1959, plaintiff was made wood repairman. He took a 60-day leave of absence for union business, July 17, 1959, but returned October 12, 1959, as a resin-mixer. He worked as partition assembler from October 26, 1959, until March 21, 1960, when he went back to resin-mixer. On May 20, 1960, he was given a leave of absence because of pulmonary emphysema.

Plaintiff described to the hearing referee the conditions on each of the jobs to which he was assigned. The resin mixing required plaintiff to work with styrene, acetone, which was in large open vats, and resin, which was a fluid of the consistency of soft honey emitting much odor and fumes. Plaintiff gave the following testimony concerning the mixing operation:

The resin came in 50-gallon drums, cadox and surfix were slowly added to the mixture. The empty cans were washed out with acetone, by bending over into each can.

"The surfix used as a filler in the plastic was quite dusty. It was of the consistency, perhaps, of a fine grade of flour and it was poured, three bags of it, into a mix. * * * We would pour this slowly in, and all the time up to April or May when I was about to leave the job, there was no ventilation, and the fumes from the resins were blowing in my face and the surfix was blowing up into my nose and it got into my clothes and eyes."

Plaintiff described his job, during May, 1960, on the assembly line, as follows:

"I would take the rejects off the assembly line and sand off the rough edges on the plastic chairs with a hand sander and polish them and put them back on the assembly line."

Plaintiff further testified that he inhaled dusts created by this work. He also told of a particularly severe difficulty he encountered while working in the assembly department:

"Then I came in one morning and they put me on a router, which grinds different designs, and it is used for cutting holes in doors, and so forth, and the dust would blow and the sawdust would blow in my face, and I would go to the supervisor and tell him. * * * I would go home at night and I would be spitting up dry sawdust, and my chest would be hurting and paining, but I wouldn't refuse to do the job."

He stated that he could do routing for only two or three days, because breathing of wood shavings and dust severely irritated his chest.

Defendant introduced as a witness Lloyd Gordon, director of industrial hygiene for defendant Zurich Insurance Company, who was formerly an industrial hygiene engineer for the State of Michigan. This witness took air samples on November 10, 1960, in various departments in which the plaintiff had been working in the Brunswick-Balke-Collender plant. He testified that the concentration of particles was 1.2 million per cubic foot in the area near the preform machines; that the concentration at the breathing level was 2.9 million particles per cubic foot in the area where the workers ground the flashing off molded plastic seats. He also explained that surfix is calcium carbonate, that a certain amount of glass fiber was contained in the dusts, and that this fiberglas was a silicate formed by the combination of silica sand and alkali metals. The witness testified that dust samples taken in the holding room contained resin and glass but he did not separate the two, and that in the wood department, the dust was wood dust and aluminum oxide abrasive dust. He

further testified that he detected no significant amounts of styrene or acetone vapors in the course of his survey.

Since the record supports the finding of the appeal board that plaintiff's disability was caused by his exposure to dust, such finding is conclusive and binding on this Court, by virtue of CL 1948, § 413.12 (Stat Ann 1960 Rev § 17.286), *Coates* v. *Continental Motors Corporation* (1964), 373 Mich 461, 466.[1]

The problem remaining for determination turns upon the meaning of the term "silicosis and other dust diseases", in CLS 1961, § 417.4 (Stat Ann 1960 Rev § 17.223). Plaintiff contends that this language refers only to diseases caused by inhalation of silica dusts. The record shows that the dusts to which plaintiff was exposed were calcium carbonate, aluminum oxide, and various forms of silicates, which are chemically more complex compounds of the elements silicon and oxygen than is silica, which is simply silicon-dioxide, chemical formula $SiO_2$. The crux of the issue, therefore, is whether the term "dust" as used in this statutory context, is to be limited to silica particles or to be construed broadly to include a larger range of industrial compounds.

In *Finch* v. *Ford Motor Company* (1948), 321 Mich 469, the terminology "silicosis or other dust disease" was held to include pneumoconiosis, which is a broader disease category than the term silicosis. Silicosis is defined in Stedman's Medical Dictionary, p 1364, as "a form of pneumonoconiosis, due to the inhalation of stone dust; stone-masons' disease; potters' consumption". The term pneumoconiosis (alternate spelling of pneumonoconiosis) is defined in Stedman's Medical Dictionary (Unabridged Lawyer's Edition), p 1189, as "fibrous induration * * * caused by inhalation of dust". Webster's Third New

---

[1] See, also, Const 1963, art 6, § 28.—REPORTER.

International Dictionary, p 1746, defines pneumo-coniosis thusly: "a disease of the lungs caused by habitual inhalation of irritant mineral or metallic particles". 1 Larson, Workmen's Compensation Law, § 41.12, p 595, also uses the terminology "silicosis and other dust diseases", and includes asbestosis as an example of such diseases. "Asbestosis", in turn, is defined in Webster's Third New International Dictionary, p 126, as "a form of pneumoconiosis caused by the inhalation of fine particles of asbestos", which is "a mineral (as chrysolite, tremolite, actinolite) that readily separates into long flexible fibers, suitable for uses where incombustible, nonconducting, or chemically resistant material is required". The minerals, included in the definition of asbestos,[2] are not a form of silica but types of silicates.

The use of the term "silicosis and other dust diseases" in this manner by such an authority as Larson and the award for pneumoconiosis affirmed in the *Finch Case,* leads this Court to the conclusion that the statutory language "other dust diseases" includes the plaintiff's condition, which resulted from exposure to particles of silicates and other industrial compounds. The appeal board, therefore, properly limited plaintiff's recovery to $10,500.

The order of the workmen's compensation appeal board is affirmed. Costs to appellee.

FITZGERALD, P. J., and HOLBROOK, J., concurred.

[2] Webster's Third New International Dictionary, *asbestos,* p 126.—REPORTER.