DERWINSKI v EUREKA TIRE COMPANY

Docket No. 60751. Argued June 5, 1979 (Calendar No. 2).—Decided
December 27, 1979.

Eugene Derwinski applied for workers' compensation benefits
against his last employer, Eureka Tire Company, for a back
injury. Eureka sought apportionment with prior employers.
The administrative law judge awarded benefits and ordered
apportionment between Eureka and a prior employer of plain-
tiff, Hosking Tire Company. The Worker's Compensation Ap-
peal Board reversed as to apportionment on the ground that
degenerative disc disease is not an occupational disease, for
which the statute allows apportionment. The Court of Appeals,
Quinn, P.J., and Bashara and D. E. Holbrook, Jr., JJ., reversed,·
holding that the plaintiff's back condition was an occupational
disease within the meaning of the apportionment statute, and
that there should be apportionment (Docket No. 77-987). Defen-
dants Hosking and American Insurance Co. appeal. *Held:*

1. The Worker's Compensation Appeal Board's findings of
fact are conclusive in the absence of fraud. Thus, the Court is
bound to accept the appeal board's factual finding which has
support in the record that the plaintiff's back condition was not

REFERENCES FOR POINTS IN HEADNOTES
[1] 81 Am Jur 2d, Workmen's Compensation § 631.
[2] 81 Am Jur 2d, Workmen's Compensation §§ 79, 80.
[3] 82 Am Jur 2d, Workmen's Compensation §§ 240, 409.
  81 Am Jur 2d, Workmen's Compensation § 223.
[4, 6, 8] 82 Am Jur 2d, Workmen's Compensation §§ 289 *et seq.,* 298.
[5] 82 Am Jur 2d, Workmen's Compensation §§ 547, 635.
[7, 9] 81 Am Jur 2d, Workmen's Compensation § 2.
  82 Am Jur 2d, Workmen's Compensation § 409.
[10] 81 Am Jur 2d, Workmen's Compensation § 225.
  82 Am Jur 2d, Workmen's Compensation §§ 289-298.
[11] 82 Am Jur 2d, Workmen's Compensation § 290 *et seq.*
[12] 81 Am Jur 2d, Workmen's Compensation § 225.
  82 Am Jur 2d, Workmen's Compensation 289.
[13] 82 Am Jur 2d, Workmen's Compensation § 552.
[14] 82 Am Jur 2d, Workmen's Compensation § 409.
  81 Am Jur 2d, Workmen's Compensation § 27 *et seq.*

the result of the incident he suffered at Eureka Tire Company or the result of that incident and subsequent aggravation at Eureka, but was instead the result of his heavy lifting duties for both employers.

2. The Worker's Compensation Appeal Board does not have any authority to alter or modify a provision of the Worker's Disability Compensation Act, by interpretation or otherwise, in order to square that provision with the appeal board's perception of good public policy. That is solely the Legislature's prerogative. The language used by the Legislature in the apportionment of liability provision is clear and straightforward. An employee must be suffering from a "disease" which is "due" to the "nature" of the employment in order for the apportionment provision to apply.

3. The plaintiff's back condition falls within the ordinary meaning of the language used by the Legislature in the apportionment provision. The condition is abnormal, it was found to be a consequence of environmental stress resulting from the inherent elements of his employment, it impairs his normal physiological functioning, and it is considered a disease by the medical profession; the Worker's Compensation Appeal Board found that it was caused by the nature of his heavy lifting duties with both employers.

4. The argument by the Worker's Compensation Appeal Board that, because the apportionment provision only authorizes apportionment for a "disease" and not for a "disease or disability", the phrase used in the act in defining "personal injury", the apportionment provision was not meant to apply to a disability, and that the plaintiff's back condition is a disability and not a disease, is a legal conclusion subject to judicial review rather than a conclusive finding of fact.

5. The term "disability" as it is defined in the Worker's Disability Compensation Act is a shorthand expression for the end result of a personal injury. It does not connote a class of personal injuries distinct from disease. Many sections of the act, including the apportionment provision, use the term "disability" in the same sense as defined by the Legislature in the act. The Legislature did not intend to give an inferential meaning to the term "disability" in addition to the express statutory definition. Furthermore, even if there were a distinction between "disease" and "disability", the plaintiff's back condition is a "disease". "Disease" includes abnormal physiological conditions caused by environmental stress. Both medical experts diagnosed the plaintiff's back condition as "degenerative disc disease", and the appeal board found that it was the

result of his heavy lifting duties with both employers. Repeated strains associated with the employment may supply the distinctive element necessary to make a back injury occupational. This case is distinguishable from those in which the back condition was caused by a single-event injury or by such an injury and subsequent aggravation.

6. The purpose of the apportionment provision is to distribute equitably the liability for a disease caused by similar employment conditions among the employers who were responsible for those conditions. The provision should be interpreted with this purpose in mind. If back conditions such as the plaintiff's were not apportionable, employers could be expected to refuse to hire persons who have worked previously in occupations which require repeated heavy lifting duties. It is not appropriate for the Court to excise back diseases from the statutory provisions governing occupational diseases for purposes of easier administration. The Worker's Compensation Appeal Board can fashion an order directing payment to a plaintiff during any appeal solely on the question of apportionment between or among successive employers so that employees need not wait for benefits while the question of apportionment is decided.

Justice Levin, in addition to signing Chief Justice Coleman's opinion, wrote separately to say that the history of the occupational disease chapter of the Worker's Disability Compensation Act supports the conclusion that the Legislature did not create two categories of personal injury compensable under that chapter, occupational disease and occupational disability, compensation for the former being apportionable and for the latter not apportionable. The draftsman of the chapter apparently regarded "disease" as covering every disablement that was compensable under the new chapter, or at least saw no need monotonously to reiterate "disease or condition". The basic purpose of the chapter is to make an industry responsible for disablements which are characteristic of employment in it and to allocate that responsibility among those in the industry who employed the injured worker. To distinguish between causes of disablement based on whether they are diseases or conditions would not serve that purpose.

The decision of the Court of Appeals is affirmed and the order apportioning liability is reinstated.

Justice Williams, joined by Justice Moody, dissenting, wrote:

1. The Court of Appeals held that a disease is present for purposes of the apportionment statute when a compensable disability derives from the effects of continued and protracted exposure to the inherent elements of the employment. The

definition is unacceptable on two grounds: first, it categorizes "disease" as a particular type of "compensable disability", whereas the Legislature, in defining "personal injury", intended to make a clear distinction between the terms "disease" and "disability"; second, the definition is too broad and would include many types of injuries clearly not diseases as that term is used under the act. The Supreme Court has decided that a back condition derived from the effects of continued exposure to one of the inherent elements of the employment, heavy lifting, is not an occupational disease whose concealment from an employer would prevent recovery of compensation benefits from the employer.

2. "Disease" as used under the act is not an easy term to define, and the Court cannot specifically define "occupational disease" without more legislative guidance, but it can reach certain conclusions: 1) back injuries do not appear to be the type of compensable events normally found to be occupational diseases; 2) the Court of Appeals definition of occupational disease is unacceptable; 3) it cannot be said that the appeal board made a definitional error of law in finding that the plaintiff was suffering from a disability and not a disease; 4) whether an injury is an occupational disease is generally a question of fact and in this case there is support in the record for the factual finding of the appeal board. Under these circumstances the Court finds the Workmen's Compensation Appeal Board's interpretation of disability and its application to these facts not erroneous.

3. Apportionment among employers is authorized by the statute only in the case of a disease. The statute distinguishes between personal injuries which are diseases and personal injuries which are disabilities, and the difference as to apportionment is not mere oversight on the part of the Legislature. There is competent evidence to support the determination of the appeal board that plaintiff was suffering from a disability and not a disease, and that therefore apportionment was not authorized.

79 Mich App 750; 263 NW2d 30 (1977) affirmed.

OPINION OF THE COURT

1. WORKMEN'S COMPENSATION — BACK INJURY — QUESTION OF FACT.

A finding of the Worker's Compensation Appeal Board supported by the record that a worker's back condition was not the result of a single-event injury he suffered at his last employment or the result of that event and subsequent aggravation at his last employment, but was instead the result of his heavy lifting

duties for his last employer and a previous employer is a conclusive finding of fact in the absence of fraud (MCL 418.861; MSA 17.237[861]).

2. WORKMEN'S COMPENSATION — APPEAL BOARD — STATUTES — CONSTRUCTION.

The Worker's Compensation Appeal Board does not have the authority to alter or modify a provision of the Worker's Disability Compensation Act, by interpretation or otherwise, in order to square that provision with the appeal board's perception of good public policy; that is solely the Legislature's prerogative (MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.).*

3. WORKMEN'S COMPENSATION — OCCUPATIONAL DISEASE — APPORTIONMENT.

An employee must be suffering from a "disease" which is "due" to the "nature" of his employment for apportionment of liability for workers' compensation payments among his employers (MCL 418.435; MSA 17.237[435]).

4. WORKMEN'S COMPENSATION — BACK INJURY — OCCUPATIONAL DISEASE — WORDS AND PHRASES.

A worker's back condition falls within the ordinary meaning of the term "disease" used by the Legislature in the apportionment of liability provision of the Worker's Disability Compensation Act where the condition is abnormal and a consequence of environmental stress, impairs his normal physiological functioning, and is considered a degenerative disc "disease" by the medical profession, and where the Worker's Compensation Appeal Board found the back condition was caused by the nature of the worker's heavy lifting duties for two successive employers (MCL 418.435; MSA 17.237[435]).

5. WORKMEN'S COMPENSATION — OCCUPATIONAL DISEASE — STATUTES — CONSTRUCTION — QUESTION OF LAW.

A conclusion by the Worker's Compensation Appeal Board as to the meaning of words used by the Legislature to define the word "disease" in two statutory provisions is within the proper scope of judicial review as a question of law, not a conclusive finding of fact that a worker's condition is a "disability" rather than an occupational disease (MCL 418.401[c], 418.435; MSA 17.237[401][c], 17.237[435]).

6. WORKMEN'S COMPENSATION — DISABILITY — WORDS AND PHRASES.

The term "disability", as defined in the Worker's Disability Compensation Act, is a shorthand expression for the end result

of a personal injury; it does not connote a class of personal injuries distinct from disease (MCL 418.401; MSA 17.237[401]).

7. WORKMEN'S COMPENSATION — APPORTIONMENT — STATUTES — CONSTRUCTION.

   The purpose of the statute authorizing apportionment of workers' compensation benefits among the last employer ·and prior employers is to distribute equitably the liability for a disease caused by similar conditions; the statute should be interpreted with that purpose in mind (MCL 418.435; MSA 17.237[435]).

CONCURRING OPINION BY LEVIN, J.

See headnotes 1-7.

8. WORKMEN'S COMPENSATION — OCCUPATIONAL DISEASE — DISABILITY — WORDS AND PHRASES.

   *The draftsman of the chapter of the Worker's Disability Compensation Act concerning occupational diseases apparently regarded "disease" as covering every disablement that was compensable under the new chapter, or at least saw no need monotonously to reiterate the phrase "disease or condition" (MCL 418.401 et seq.; MSA 17.237[401] et seq.).*

9. WORKMEN'S COMPENSATION — OCCUPATIONAL DISEASE — LEGISLATIVE PURPOSE.

   *The basic purpose of the chapter of the Worker's Disability Compensation Act concerning occupational diseases is to make an industry responsible for disablements which are characteristic of employment in it and to allocate that responsibility among those in the industry who employed the injured worker; to distinguish between causes of disablement based on whether they are diseases or conditions would not serve that purpose (MCL 418.401 et seq.; MSA 17.237[401] et seq.).*

DISSENTING OPINION BY WILLIAMS, J.

10. WORKMEN'S COMPENSATION — STATUTES — CONSTRUCTION — "PERSONAL INJURY" — "DISABILITY" — "DISEASE".

    *The use of the terms "disease or disability" in the statutory definition of "personal injury" indicates that the Legislature intended to make a clear distinction between these two terms and that one is not merely a form of the other, and this is further evidenced by the very different treatment of disease in subsequent sections of the statute (MCL 418.401[c], 418.431, 418.435; MSA 17.237[401][c], 17.237[431], 17.237[435]).*

11. WORKMEN'S COMPENSATION — OCCUPATIONAL DISEASE — DEFINI-
TION.

*A definition of occupational disease as a compensable disability which derives from the effects of continued and protracted exposure to the inherent elements of the employment is unacceptable because it categorizes disease as a particular type of compensable disability, which is not in harmony with the statutory definition of personal injury, and because it is entirely too broad and would categorize as diseases many types of injuries clearly not diseases as that term is used under the act (MCL 418.401[c]; MSA 17.237[401][c]).*

12. WORKMEN'S COMPENSATION — OCCUPATIONAL DISEASE — BACK
INJURY.

*Back injuries do not appear to be the type of compensable events normally found to be occupational diseases.*

13. WORKMEN'S COMPENSATION — OCCUPATIONAL DISEASE — QUESTION
OF FACT.

*Whether an injury is an occupational disease is generally a question of fact, and where there is support in the record for a factual finding by the Workmen's Compensation Appeal Board that a plaintiff with a back injury was suffering from a disability and not a disease, that finding is conclusive (Const 1963, art 6, § 28).*

14. WORKMEN'S COMPENSATION — APPORTIONMENT.

*Apportionment of compensation benefits among the last employer and prior employers is authorized by statute only in the case of an occupational disease and not a disability, and this difference in statutory coverage is not mere oversight on the part of the Legislature (MCL 418.435; MSA 17.237[435]).*

*Paupore & Ryan, P.C.* for defendant Eureka Tire Company.

*Ulanoff, Ross, Summer & LaKritz, P.C.,* for defendants Hosking Tire Company and American Insurance Co.

Amicus Curiae:

*Conklin, Benham, McLeod, Ducey & Ottaway,*

*P.C.* (by *Thomas P. Chuhran),* for Alliance of American Insurers.

Coleman, C.J. *(to affirm).* The plaintiff worked as a tire recapper for defendant Hosking Tire Company from 1964 to 1971 and in the same capacity for defendant Eureka Tire Company from 1971 to 1974. He ceased working for Eureka in 1974 because of a disabling degenerative disc disease for which he is now entitled to and does receive workers' compensation benefits. The question presented is whether the last employer, Eureka, should bear full responsibility for payment of the benefits due plaintiff or whether that responsibility should be shared by both employers. The hearing referee factually found that the plaintiff's back condition was caused by the repeated lifting and bending he was required to do in the course of his work for both employers. On the basis of this finding, the referee concluded that an apportionment of liability was required. The Worker's Compensation Appeal Board accepted and independently verified the referee's factual findings, but rejected his legal conclusion. The appeal board ruled on the basis of public policy, administrative precedent and statutory interpretation that an apportionment was not permitted in cases involving back conditions such as that suffered by the plaintiff. The Court of Appeals reversed the board and remanded for reinstatement of the referee's original order apportioning liability. Defendant Hosking now appeals.

I would affirm the Court of Appeals. Given the particular factual findings of the referee and the appeal board in this case, apportionment was proper. If it is better public policy (less issues to be decided by the WCAB) to excise from "occupa-

tional disease" those having to do with the back,
the Legislature is the proper forum.

I

The tire recapping process used by both defen-
dants Hosking and Eureka required the plaintiff to
engage in extremely repetitious and strenuous
physical activity. The plaintiff testified that, in
order to recap one tire, he had to lift the tire up
and down into and out of various molds and ma-
chines a total of approximately 20 times. The
lifting distance varied from three to four feet. The
tires ranged in weight from 30 pounds to 150
pounds or more. The plaintiff did most of this
lifting manually without help from his co-workers.

The plaintiff's work during his seven years at
Hosking was much more demanding than his work
during his three years at Eureka. At Hosking he
was required to recap 50 to 60 tires per day, while
at Eureka he was only required to recap 20 to 35
tires per day.

After several minor back incidents in the course
of his work at both Hosking and Eureka, the
plaintiff suffered another incident at Eureka in
December of 1973. Although he worked the rest of
the day of this incident and continued to work
thereafter, he remained in constant pain. He
worked six more months until June of 1974 when
the pain became too great and he was forced to
cease work.

Two medical experts examined the plaintiff in
connection with this case and both of them con-
cluded that the plaintiff was suffering from "de-
generative disc disease". One of these experts, Dr.
Sim, an orthopedic surgeon from Mayo Clinic,
described this disease in lay terms as "[b]asically

* * * a worn-out disc" and responded in the affirmative when asked whether this disease was a "process rather than an occurrence type of injury". The other expert, Dr. Roberts, stated that the plaintiff's back condition was of a type that "required prolonged stress, wear and tear, taking years to develop".

Because the plaintiff had not been examined by these experts during the seven years he had worked at Hosking and because there were no X-rays of the plaintiff's back dating from that period, neither doctor could state with a reasonable degree of medical certainty whether the degenerative disc disease had begun at Hosking and continued at Eureka or whether it had sprung up solely during the plaintiff's final three years at Eureka. Based on the data available to them, the doctors could only be certain that the disease had been present since the more serious incident suffered by the plaintiff at Eureka in December of 1973. However, Dr. Sim did testify that it was "quite probable" that the plaintiff's work at Hosking had either caused, contributed to, or accelerated the disease; and Dr. Roberts reiterated his view that the degenerative changes in the plaintiff's back, as evidenced by current X-rays, were of "a type and result of rather prolonged wear and tear".

The hearing referee factually found that the plaintiff's back condition "was not caused by any single event but was the result of repeated trauma caused by lifting and bending in the course of his employment with the two defendant companies".[1] On the basis of this finding, the referee concluded that an apportionment of liability was required based on the respective lengths of time the plaintiff had worked for Hosking and Eureka.

[1] Hearing Referee's Opinion, p 1.

Defendant Hosking appealed the referee's findings and decision to the Worker's Compensation Appeal Board (WCAB) arguing, *inter alia,* that the plaintiff's back condition resulted solely from the single-event incident suffered by the plaintiff at Eureka in December of 1973 or from that incident plus subsequent aggravation caused by his continued employment at Eureka until June of 1974. Hosking contended that the plaintiff's condition was compensable by virtue of Chapter Three of the Worker's Disability Compensation Act.[2] Because Chapter Three did not contain any apportionment provisions, there could be no apportionment.

The appeal board did not accept the factual propositions urged by defendant Hosking. The board stated:

"First, we proceed to our fact finding. We accept the referee's factual conclusion and independently find that plaintiff's disability is the result of his heavy lifting duties at both employers."[3]

The board then stated the legal question presented:

"Having made that finding, which directs that plaintiff's disablement is compensable by virtue of the provisions of Chapter 4 * * * are we required to apportion liability by application of Section 435?"[4]

The pertinent portion of § 435[5] to which the board referred states:

"The hearing referee *shall apportion liability* for

[2] MCL 418.301 *et seq.;* MSA 17.237(301) *et seq.*

[3] Appeal Board Opinion, p 2.

[4] *Ibid.*

[5] MCL 418.435; MSA 17.237(435).

compensation among the several employers in proportion to the time that the employee was employed in the service of each employer *in the employment to the nature of which the disease was due and in which it was contracted * * *.*" (Emphasis added.)

The board concluded that this statute should not be read to require apportionment in cases involving degenerative disc disease caused by repeated lifting duties at two or more employers. The board candidly admitted that this conclusion was based on a "conscious policy determination" by the board and its predecessors not to treat back conditions as diseases for purposes of apportionment under § 435.[6]

The primary reason given by the board for this policy determination was the possibility of an increase in litigation and a concomitant increase in the length of time a claimant must wait for benefits if the statute were to be read so as to include back conditions. In closing, the board added:

"Should our decision here be subject to Court review, and should the Court find insufficient the argument of policy and administrative precedent urged here (which we deem more than sufficient), we urge the consideration of a statutory rationale arising out of definitional differences in Sections 401 and 435. In Section 401, * * * [the term 'personal injury' is defined to] 'include a disease or disability'. Section 435 provides for apportionment among prior employers only for 'disease'. Notwithstanding the medical term 'degenerative disc disease', occupationally-weakened backs could more appropriately be described by the term 'disability' than by the term 'disease' as the latter word is treated in common usage, and thus be excluded from the provisions of Section 435.'"[7]

---

[6] Appeal Board Opinion, p 3.

[7] *Ibid.*

Defendant Eureka appealed the board's decision to the Court of Appeals. That Court reversed the board and remanded the case for reinstatement of the referee's original order apportioning liability. 79 Mich App 750; 263 NW2d 30 (1977). In its opinion, the Court first explained the purpose of the apportionment provision:

"Apportionment of financial liability for an employee's disease-caused disability is designed to reflect the relative contribution of similar employment conditions at each employer to the occurrence of the disability. In other words, the fortuitous event of a disability, which is but the culmination of a prolonged exposure of the employee to deleterious employment conditions at multiple employers, should not result in the imposition of a financial burden only upon the last in the series of employers." *Id.,* 754.

The Court then interpreted the term "disease" in § 435 in light of this purpose:

"A disease is present for purposes of the apportionment statute whenever the evidence establishes that the compensable disability derives from the effects of continued and protracted exposure to the inherent elements of the employee's employment."

Finally, the Court compared the factual findings of the appeal board to this interpretation and concluded that the plaintiff's back condition did constitute a disease for purposes of § 435.

Defendant Hosking has now appealed the Court of Appeals decision to this Court.

II

The appeal board's findings of fact are conclusive in the absence of fraud. MCL 418.861; MSA

17.237(861). Thus, we are bound to accept the WCAB's factual finding (which has support in the record) that the plaintiff's back condition was not the result of the incident he suffered at Eureka in December of 1973 or the result of that incident plus subsequent aggravation at Eureka, but was instead the result of his heavy lifting duties for both employers.

The legal issue generated by this finding of fact is whether a medically recognized back disease caused by repeated duties in the normal course of an employee's daily routine constitutes a "disease" within the meaning of § 435.

## III

The appeal board does not have any authority to alter or modify a provision of the Worker's Disability Compensation Act, by interpretation or otherwise, in order to square that provision with the board's perception of good public policy. That is solely the Legislature's prerogative.

The language used by the Legislature in § 435 is clear and straightforward. It requires an apportionment of liability according to the length of time the employee has worked for each employer "in the employment to the nature of which the disease was due and in which it was contracted". Thus, the employee must be suffering from a "disease" which is "due" to the "nature" of his or her employment in order for the statute to apply.

The plaintiff's back condition falls within the ordinary meaning of the language used by the Legislature in § 435. The *American Heritage Dictionary of the English Language, New College Edition (1975),* defines the word "disease" as:

"An abnormal condition of an organism or part, especially as a consequence of infection, inherent weakness, or environmental stress, that impairs normal physiological functioning."

Other dictionaries contain a similar definition.[8] The plaintiff's condition is certainly "abnormal", it was found to be a "consequence of * * * environmental stress" and it "impairs" his "normal physiological functioning". In addition, the condition is considered a disease—"degenerative disc disease" —by the medical profession. And the appeal board found it was caused by the nature of his employment at both employers—his "heavy lifting duties".[9]

The board would have us reject the ordinary meaning of the words used by the Legislature in § 435 by reference to § 401(c)[10] of the act which states:

"Whenever used in this act:

* * *

"(c) 'Personal injury' shall include a *disease or disability* which is due to causes and conditions which are characteristic of and peculiar to the business of the employer * * *." (Emphasis added.)

The board argues that because § 435 only authorizes apportionment for a "disease" and not for a "disease or disability", apportionment was not meant to apply to a "disability". Furthermore, the

---

[8] See, for example, *Webster's Third New International Dictionary of the English Language, Unabridged (1966 ed)*, p 648.

[9] It is questionable that the disease is "caused by" rather than "aggravated by" the hard labor but the WCAB fact-finding is final. Degenerative disc disease is not uncommon and is found in those who perform no hard labor—or any labor—as well as in those who perform arduous tasks.

[10] MCL 418.401(c); MSA 17.237(401)(c).

board urges that because the plaintiff's back condition could be described by the term "disability" rather than by the term "disease", there should be no apportionment in this case. *Ergo,* if the policy argument should fail, we could simply give the disease another name.

This argument by the board is not a conclusive finding of fact that the plaintiff's back condition is a "disability" and not a "disease". To the contrary, the argument is couched in a legal conclusion as to the meaning of the words used by the Legislature in §§ 401(c) and 435, thus bringing it within the proper scope of judicial review.

## IV

The first flaw in the board's legal argument is that it does not appear from a reading of the act that the Legislature, by using the phrase "disease or disability" in § 401(c), intended thereby to create two distinct classes of personal injuries. Section 401(a)[11] defines the term "disability" in a manner at odds with the meaning which the board urges us to adopt. That section states:

"Whenever used in this act:

"(a) 'Disability' means the *state of being disabled from earning full wages at the work in which the employee was last subject to the conditions resulting in disability.*" (Emphasis added.)

As so defined, the term "disability" represents a shorthand expression for the end result of a personal injury. It does not connote a class of personal injuries distinct from diseases. Many sections of the act, including § 435 itself, use the term

---

[11] MCL 418.401(a); MSA 17.237(401)(a).

"disability" in the same sense as defined by the Legislature in § 401(a).[12]

Despite the Legislature's express definition of the term "disability" in § 401(a), the board would have us infer that the Legislature additionally intended that this term should designate a class of personal injuries distinct from diseases.

If we accepted this interpretation and the board's conclusion that the plaintiff's back condition could more appropriately be described by the term "disability" than by the term "disease", no benefits could be awarded in this case. Based on its factual findings, the board properly concluded that Chapter Four and not Chapter Three controlled. Section 415[13] of Chapter Four, which delineates the circumstances under which benefits can be awarded, only authorizes the payment of benefits when the claimant's condition is "caused by a disease". The phrase "disease or disability" is not used. Thus, under the board's interpretation, § 415 would not apply to a "disability".

I do not believe that the Legislature intended such a result. Nor do I believe that in addition to the express definition of the term "disability" in § 401(a), the Legislature also intended that this term should have some other meaning when used in another section.

Assuming *arguendo* that the Legislature did intend to distinguish between a "disease" and a "disability" for purposes of apportionment under § 435, the board is also incorrect in its conclusion that the plaintiff's back condition could more appropriately be described by the term "disability"

---

[12] In addition to § 435, see § 415 (MCL 418.415; MSA 17.237[415]), § 431 (MCL 418.431; MSA 17.237[431]), and § 441 (MCL 418.441; MSA 17.237[441]).

[13] MCL 418.415; MSA 17.237(415).

than by the term "disease" as the latter word is treated in common usage.

As noted above, the dictionary meaning of the word "disease" includes abnormal physiological conditions such as that suffered by the plaintiff and caused (the board found) by environmental stress. Also, both of the medical experts who examined the plaintiff diagnosed his condition as "degenerative disc disease"—in lay terms, "a worn-out disc". The board found that this condition was the result of the plaintiff's heavy lifting duties at both employers. Those duties required the plaintiff to lift hundreds of thousands of tires each year for ten successive years.[14] Professor Larson, speaking about "occupational diseases" in his treatise on workers' compensation law, states that "repeated strains associated with the employment may supply the distinctive element necessary to make a back injury occupational".[15]

These factors *in toto* are too clear to permit obfuscation in order to avoid Eureka's claim under § 435.

V

This conclusion is consistent with a long series of cases in which this Court, in the course of interpreting other sections of the act, has treated back conditions caused by repeated heavy lifting duties as constituting or possibly constituting occu-

---

[14] Assuming, as plaintiff testified, that to recap one tire he had to lift it 20 times and that he was required to recap 50 to 60 tires per day during his seven years at Hosking and 20 to 35 tires per day during his three years at Eureka, the average number of lifts per year at Hosking would be 264,000 (20 lifts × 55 tires × 240 working days) and the average at Eureka would be 132,000 (20 lifts × 27.5 tires × 240 working days).

[15] 1B Larson, Workmen's Compensation Law (1979 rev), § 41.33, pp 7-377—7-378.

pational diseases (whether or not degenerative disc disease was involved). See *Underwood v National Motor Castings Division, Campbell, Wyant & Cannon Foundry Co,* 329 Mich 273; 45 NW2d 286 (1951), *Fields v G M Brass & Aluminum Foundry Co,* 332 Mich 113; 50 NW2d 738 (1952), *Gibbs v Motor Wheel Corp,* 333 Mich 617; 53 NW2d 573 (1952),[16] and *Braxton v Chevrolet Grey Iron Foundry Division of General Motors Corp,* 396 Mich 685; 242 NW2d 420 (1976). It is also consistent with *Kalee v Dewey Products Co,* 296 Mich 540; 296 NW 826 (1941), in which the plaintiff developed bursitis in her shoulder from repeated twisting motions required as a normal part of her work. This Court affirmed an award of benefits for an occupational disease. A worn-out shoulder is little different from a worn-out back.

*Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243; 262 NW2d 629 (1978), is inapposite to the case at bar. In *Dressler* the appeal board factually found that the plaintiff's back problem was the result of a single-event injury (a fall at work) and subsequent aggravations thereof. On the basis of this finding, the board concluded that Chapter Three controlled. There was no question about apportionment under § 435. The cases holding that certain back disabilities constituted occupational diseases were distinguished by Justice WILLIAMS in *Dressler* on the grounds that those "cases involve situations where the plaintiff's back condition arose *gradually because of long and repeated bending, twisting, or lifting, even though there might also have been an incidental trauma".* *Id.* at 257. (Emphasis added.)

In the case at bar, the board rejected the conten-

---

[16] The appeal board's opinion in *Gibbs* makes it clear that the plaintiff was awarded benefits for an occupational disease. See 1950-1951 WCABO (Docket No. 11505, July 20, 1951).

tion that the plaintiff's back condition was caused by a single-event injury at Eureka in December of 1973 or by that injury plus subsequent aggravations thereof. Instead, the board found that it was caused by the plaintiff's repetitive heavy lifting duties for both employers. On the basis of this finding, the board properly concluded that Chapter Four controlled. Thus, the fact-facting in *Dressler* is essentially the opposite of the situation presently before us and the language of the opinion is supportive of this opinion. The cases distinguished by the majority in *Dressler* are particularly applicable to this case because of the fact-findings by the WCAB.

## VI

The appeal board in the case at bar failed even to mention that the purpose of § 435 is to distribute equitably the liability for a disease caused by similar employment conditions among the employers who were responsible for those conditions. We agree with the Court of Appeals that § 435 should be interpreted with this purpose in mind. Indeed, the position advocated by the appeal board and Justice WILLIAMS insulates the employer (Hosking) whose operation placed the most stress on plaintiff.

Unfortunately, the board also failed to discuss the very real possibility that if back conditions such as that suffered by the plaintiff were not apportionable, employers can be expected to refuse to hire persons who have worked previously in occupations which require repeated heavy lifting duties.

Although the policy considerations toward the reduction of issues in the crowded WCAB docket are understandable, it is not the function of the

judiciary to override legislatively expressed public policy in order to implement its own views.

The drafters of the Worker's Disability Compensation Act clearly intended that similar multiple employments, through which an occupational disease finally progressed to a compensable disability, should share proportionately in the payment of benefits. In this case, Mr. Derwinski was found by both the referee and the WCAB to have a degenerative disc disease caused by work in the two employments. That finding is conclusive and requires apportionment of liability. It is not appropriate for this Court to excise back diseases from the statute governing occupational diseases for purposes of easier administration.

The argument that employees might have to wait for benefits while carriers appealed the sole question of apportionment is without merit. Even as in this case, in which the employee has been receiving full benefits, the WCAB can fashion an order directing payment to the worker, with the issue of apportionment to continue to an orderly conclusion.[17]

I would therefore adopt the Court of Appeals interpretation of § 435 as it applies to the facts of this case and would affirm the reversal of the appeal board and the remand for reinstatement of the hearing referee's original order apportioning liability.

KAVANAGH, LEVIN, FITZGERALD, and RYAN, JJ., concurred with COLEMAN, C.J.

LEVIN, J. (concurring). The history of the occupational disease chapter supports the conclusion in the Chief Justice's opinion, which I have signed,

---

[17] At a minimum, MCL 418.862; MSA 17.237(862) could be employed.

that the Legislature did not create two categories of personal injury compensable under that chapter —occupational disease and occupational disability, compensation for the former being apportionable and for the latter not.

The occupational disease chapter was added in 1937.[1] The 1937 act defined the term "occupational disease" generically[2] and also set forth a schedule of compensable "occupational disease[s] or condition[s]".[3] A right to compensation arose only where

---

[1] 1937 PA 61.

[2] "Definition. Whenever used in this act:

"(a) The word 'disability' means the state of being disabled from earning full wages at the work at which the employe was last employed;

"(b) The word 'disablement' means the event of becoming so disabled as defined in sub-paragraph (a);

"(c) The term 'occupational disease' means a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment." 1937 PA 61, § 1. 1948 CL 417.1; MSA 17.220.

[3] "The disablement of an employe resulting from an occupational disease or condition described in the following schedule shall be treated as the happening of a personal injury by accident within the meaning of this act and the procedure and practice provided in this act shall apply to all proceedings under this part, except where specifically otherwise provided herein:

| Disabilities arising from | Caused by |
|---|---|
| " 1. Anthrax | Handling of wool, hair, bristles, hides or skins. |
| " 2. Lead poisoning or its sequelae | Any process involving the use of or direct contact with lead or its preparations or compounds. |
| " 3. Zinc poisoning or its sequelae | Any process involving the use of or direct contact with zinc or its preparations or compounds or alloys. |
| " 4. Mercury poisoning or its sequelae | Any process involving the use of or direct contact with mercury or its preparations or compounds. |
| " 5. Phosphorus poisoning or its sequelae | Any process involving the use of or direct contact with phosphorus or its preparations or compounds. |

\* \* \*

| "27. Dermatitis (venenata) | Any process involving the use of or direct contact with acids, alkalies, acids or oil, or with |

the death or disability was "caused by one of the *diseases* mentioned in the schedule [emphasis supplied]".[4] The provision for apportionment—the issue here—also spoke only of "disease[s]".[5]

It is apparent that the § 3 expression *"diseases*

|  |  |
|---|---|
|  | brick, cement, lime, concrete, or mortar capable of causing dermatitis (venenata). |
| "28. Hernia | Clearly recent in origin and resulting from a strain, arising out of and in the course of employment and promptly reported to the employer. |
| "29. Stone worker's or grinder's phthisis | Quarrying, cutting, crushing, grinding or polishing of stone, or grinding or polishing of metal. |
| "30. Silicosis | Mining. |
| "31. Pneumoconiosis | Quarrying, cutting, crushing, grinding or polishing of metal." |

1937 PA 61, § 2. MSA 17.221.

To illustrate the content of the section, I have quoted the first five and last five "disabilities".

[4] "If an employe is disabled or dies and his disability or death is caused by one of the diseases mentioned in the schedule contained in section two of this part and the disease is due to the nature of the employment in which such employe was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for his disablement, and he shall be entitled to be furnished with medical and hospital services, all as provided in part two of this act, * * *." 1937 PA 61, § 3. 1948 CL 417.3; MSA 17.222.

[5] "The total compensation due shall be recoverable from the employer who last employed the employe in the employment to the nature of which the disease was due and in which it was contracted. If, however, such disease was contracted while such employe was in the employment of a prior employer, the employer who is made liable for the total compensation as provided by this section may appeal to said board for an apportionment of such compensation among the several employers who since the contraction of such disease shall have employed such employe in the employment to the nature of which the disease was due. Such apportionment shall be proportioned to the time such employe was employed in the service of such employers, and shall be determined only after a hearing, notice of the time and place of which shall have been given to every employer alleged to be liable for any portion of such compensation. If the board finds that any portion of such compensation is payable by an employer prior to the employer who is made liable for the total compensation as provided by this section, he shall make an award accordingly in favor of the last employer, and such award may be enforced in the same manner as an award for compensation." 1937 PA 61, § 9. 1948 CL 417.9; MSA 17.228.

mentioned in the schedule contained in section two of this part" (emphasis supplied) referred to all scheduled occupational diseases and conditions. Otherwise "conditions" which were not "diseases" would not have been compensable under the chapter, a result plainly inconsistent with their having been scheduled. Manifestly, in providing in § 3 that an employee or his dependents shall be entitled to compensation in respect to "diseases mentioned in the schedule contained in section two of this part" the Legislature was speaking of all scheduled causes of disablement, whether they be "disease[s] or condition[s]".

The draftsman apparently regarded "disease" as covering every disablement that was compensable under the new chapter, or at least, beginning in § 3, saw no need monotonously to reiterate "disease or condition". The word "condition" appears nowhere but in § 2.[6] The meaning given "disease" by the draftsman in § 3 presumptively reflects the intent of the Legislature, and should be read into the succeeding sections, including § 9 which speaks of apportionment.

There is no reason to suppose that in making subsequent language changes in §§ 1(c) and 2,[7]

[6] The word "condition" is used in § 1(c) in another context (see fn 2, *supra)* and in § 6 (1948 CL 417.6; MSA 17.225) in still another context.

[7] The act was again amended by 1943 PA 245 and took its present form. The pertinent sections are:

"Sec. 1. Definition. Whenever used in this act:

"(a) The word 'disability' means the state of being disabled from earning full wages at the work *in* which the employe was last *subjected to the conditions resulting in disability;*

"(b) The word 'disablement' means the event of becoming so disabled as defined in subparagraph (a);

"(c) The term *'personal injury' shall include a disease or disability* which is due to causes and conditions which are characteristic of and peculiar to *the business of the employer and which arises out of and in the course of the* employment. * * *

"Sec. 2. The disablement of an employe resulting from *such disease or disability* shall be treated as the happening of a personal injury

including the substitution of "disability" for "condition",[8] the Legislature intended any change in the comprehensive meaning of the word "disease" as used in § 3 and succeeding sections, including § 9.

The basic theme of the chapter is to cover disablement due to "causes and conditions which are characteristic of and peculiar to"[9] the employer's business. To distinguish between causes of disablement characteristic of and peculiar to the employer's business based upon whether they are "disease[s]" or "condition[s]" would not serve that purpose. The construction set forth in the Chief Justice's opinion is consonant with the basic concept of the chapter, which is to make an industry responsible for disablements which are character-

within the meaning of this act and the procedure and practice provided in this act shall apply to all proceedings under this part, except where specifically otherwise provided herein.

"Sec. 3. If an employe is disabled or dies and his disability or death is caused by *a disease* and the disease is due to the nature of the employment in which such employe was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for his disablement * * *." (Emphasis supplied to indicated language changes.)

Section 9 was unchanged; it was subsequently amended by 1962 PA 189 and 1965 PA 44 to provide additional notice to former employers of the injured worker.

[8] When the act was further amended in 1943, the word "condition" was replaced by the word "disability", possibly because "condition" already appeared in § 1(c) and the draftsman thought it would be awkward to say: "The term 'personal injury' shall include a disease or *condition* which is due to causes and *conditions*". (Emphasis supplied.)

[9] " 'The phrase, "peculiar to the occupation", is not here used in the sense that the disease must be one which originates *exclusively* from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations.' (Italics supplied.)" *Underwood v National Motor Castings Division, Campbell, Wyant & Cannon Foundry Co,* 329 Mich 273, 276; 45 NW2d 286 (1951), quoting *Samels v Goodyear Tire & Rubber Co,* 317 Mich 149; 26 NW2d 742 (1947), which in turn quoted from *Glodenis v American Brass Co,* 118 Conn 29; 170 A 146 (1934).

istic of employment in it and to allocate that responsibility among those in the industry who employed the injured worker.

WILLIAMS, J. *(for reversal).* This appeal represents a dispute between two employers as to whether the benefits due plaintiff because of a back disability in this workers' compensation action should be paid only by the last employer or should be apportioned among the last and previous employers. The Court of Appeals reversed the Workmen's Compensation Appeal Board (WCAB) and found benefits due for this back injury should be apportioned. We find that action unwarranted and remand for reinstatement of the decision of the WCAB.

## I. FACTS

Plaintiff was employed as a tire recapper at Hosking Tire Company (hereinafter Hosking) from 1964 to 1971. During the course of this employment, which involved lifting of heavy tires, he suffered two specific incidents of back injury: one in December of 1964 as a result of which he lost two days of work and another in 1967 or 1968 (plaintiff could not recall the specific date).

In October of 1971 he quit his job over a wage dispute and went to work for Eureka Tire Company (hereinafter Eureka) in the same capacity. At Eureka he also suffered two incidents of back injury: one in May of 1973 which resulted in no loss of work and another on December 19, 1973. This last injury (during which plaintiff felt a "big rip" in his back) was the one which left plaintiff in pain and unable to continue working.

Plaintiff's petition for compensation was filed against defendant Eureka, the last employer, who

subsequently filed a motion seeking apportionment of any benefits between it and prior employers under MCL 418.435; MSA 17.237(435), which applies only to occupational diseases.[1] Over objection of defendant Hosking, it was thereby made a party defendant.

Testimony of plaintiff's experts, Dr. Franklin Sim, an orthopedic surgeon from the Mayo Clinic, and Dr. Warren J. Roberts, also an orthopedic surgeon, adduced that plaintiff was suffering from a back disability currently diagnosable as a degenerative disc disease but neither doctor could corroborate the existence of that particular malady prior to the December, 1973 injury. Dr. Sim, in response to a hypothetical question describing the three injuries occurring prior to December, 1973, indicated that if plaintiff had suffered prior injuries, those injuries were not signs of degenerative disc disease. Dr. Sim concluded that plaintiff's disability stemmed from the December, 1973 injury.

---

[1] MCL 418.435; MSA 17.237(435) states:

"The total compensation due shall be recoverable from the employer who last employed the employee in the employment to the nature of which the *disease* was due and in which it was contracted. If any dispute or controversy arises as to the payment of compensation or as to liability therefor, the employee shall give notice to and make claim upon the last employer only and apply for a hearing against the last employer only. If the employee was employed by prior employers in an employment to the nature of which the *disease* was due and in which it was contracted, the hearing referee to whom the case is assigned or the director on motion made in writing by the last employer shall join any or all prior employers, mentioned in the motion, as parties-defendant. * * * The hearing referee shall enter an order determining liability for compensation as between the employee and the last employer. *The hearing referee shall apportion liability for compensation among the several employers in proportion to the time that the employee was employed in the service of each employer in the employment to the nature of which the disease was due and in which it was contracted and shall enter a separate order in favor of the last employer and against prior employers for their proportionate share of liability, which order may be enforced in the same manner as an award for compensation."* (Emphasis added.)

Dr. Roberts testified based on the medical history as related by plaintiff, that but for the December, 1973 incident, plaintiff might still be working, and that he had no idea what prior X-rays showed and he could not "say degenerative disc disease was present at any" time prior to his examination. The administrative law judge found the disability was caused by the repeated trauma in the course of both employments and ordered apportionment. The WCAB reversed as to apportionment, 1977 WCABO 540. In this regard it stated:

"[B]ack disabilities have never been apportioned, even when found compensable by virtue of Part VII (old act) or Chapter 4 (current act). Such failure or tacit refusal represents, I submit a conscious policy determination by this board, prior boards and our judicial reviewers on past and present courts, not to treat back conditions as a 'disease' for purposes of Section 435 apportionment." 1977 WCABO 542.

The policy and practical reasons for denying apportionment in such cases were explained in the WCAB opinion as follows:

"There is good reason for this tacit understanding by bar, board and courts that apportionment of back disabilities is a morass into which we ought not be drawn. Such treatment would enure to the benefit of virtually no participants in this system of social legislation, and would actually impede the administration of our act. No injured worker would receive an additional cent or dollar for his disablement. The total cost of workmen's compensation in the State of Michigan would neither increase nor decrease—except to the extent that additional legal costs would be incurred by defendants engaged in internicine *[sic]* battles over shares of liability. But what *would* happen is that the predictable increase in disputed, litigated and

appealed cases would further burden an administrative system already unable to properly meet its statutory obligation to 'promptly review' such cases (Section 859). Employees waiting for determination of their eligibility for benefits, and employers paying disputed benefits under Section 862 while appeals pend, would both have to wait just a little bit longer." 1977 WCABO 543.

The Court of Appeals reversed, finding that plaintiff was suffering from an occupational disease apportionable under the statute, 79 Mich App 750; 263 NW2d 30 (1977). Defendant Hosking has applied for leave to appeal to this Court.

## II. ISSUE

The issue is not whether plaintiff is entitled to compensation, but rather whether plaintiff's disability is an occupational disease within the contemplation of MCL 418.435; MSA 17.237(435), which should result in apportionment of benefits between the two employers.

## III. APPORTIONMENT

The WCAB, in their findings of fact, stated:

"We accept the referee's factual conclusion and independently find that plaintiff's disability is the result of his heavy lifting duties at both employers. Notwithstanding the best-remembered incident in December of 1973, we find plaintiff's heavy work continued thereafter and aggravated the condition found by * * * [the testifying doctors]." 1977 WCABO 541.

Additionally, the WCAB came to the conclusion that plaintiff's injury was compensable by virtue of

MCL 418.401(c); MSA 17.237(401)(c),[2] which defines
a "personal injury" as a "disease or disability" and
then found that in this case, "[n]otwithstanding
the medical term 'degenerative disc disease', occu-
pationally-weakened backs could more appropri-
ately be described by the term 'disability' than by
the term 'disease' * * *". 1977 WCABO 543. Be-
cause the statute providing for apportionment,
MCL 418.435; MSA 17.237(435), refers only to
"diseases", the WCAB found there could be no
apportionment.

The Court of Appeals reversed the WCAB, and
found plaintiff's condition does constitute a "dis-
ease" and is therefore subject to apportionment.
*Derwinski v Eureka Tire Co,* 79 Mich App 750; 263
NW2d 30 (1977).

To fully resolve the issue presented in this case,
we find it necessary to enter into a twofold analy-
sis: (1) was the Court of Appeals reversal based on
their determination that plaintiff is suffering from
an occupational disease warranted, and (2) if not,
does the fact that the WCAB found plaintiff's
disability to be a Chapter 4, § 401(c) disability
necessitate a finding that § 435 apportionment
applies?

*A. Disability or Disease*

The WCAB, as quoted *supra,* specifically found
that plaintiff was suffering from a disability under
MCL 418.401(c); MSA 17.237(401)(c), and not a
disease. However, the Court of Appeals panel

---

[2] MCL 418.401(c); MSA 17.237(401)(c) states:

" 'Personal injury' shall include a disease or disability which is due
to causes and conditions which are characteristic of and peculiar to
the business of the employer and which arises out of and in the
course of the employment. Ordinary diseases of life to which the
public is generally exposed outside of the employment shall not be
compensable. A hernia to be compensable must be clearly recent in
origin and result from a strain arising out of and in the course of the
employment and promptly reported to the employer."

treated the question as one of law and fact. That Court formulated a legal definition of occupational disease and then proceeded to analyze the facts as found by the WCAB under its definition.

The Court of Appeals found the dispositive issue to be, "whether an employment-related injury that results from the nature of an employee's work duties is a 'disease' as that term is used in the apportionment statute", *Derwinski, supra,* 752, and defined the term "disease" as follows:

"A disease is present for purposes of the apportionment statute whenever the evidence establishes that the compensable disability derives from the effects of continued and protracted exposure to the inherent elements of the employee's employment." *Derwinski, supra,* 754.

The Court of Appeals held that since the WCAB had found "plaintiff's disability is the result of his heavy lifting duties at both employers", the personal injury suffered in this case is a disease.

We find the reasoning of the Court of Appeals unacceptable for two reasons. First, the definition of "disease" advanced by that Court categorizes disease as a particular type of "compensable disability". The use of the terms "disease or disability" within the statutory definition of "personal injury", § 401(c), however, indicates that the Legislature had intended to make a clear distinction between these two terms and that one is not merely a form of the other. See *Skowronski v Ajax Forging & Casting Co,* 54 Mich App 136; 220 NW2d 725 (1974). That disease is a separate and distinct compensable condition from disability is further evidenced by the very different treatment it receives in subsequent sections of Chapter 4, for example, §§ 431 and 435, see Part III, B, *infra.*

The second reason we find the Court of Appeals definition of "disease" unacceptable is that it is entirely too broad. When "disease" is defined as deriving "from the effects of continued and protracted exposure to the inherent elements of the employee's employment", many types of injuries clearly not diseases as that term is used under the act would require recategorization.

This is demonstrated by *Dressler v Grand Rapids Die Casting Corp*, 402 Mich 243, 256; 262 NW2d 629 (1978), decided by this Court earlier. One of the issues in *Dressler* was whether a back injury in that case was an occupational disease. In *Dressler* a disabled plaintiff suffered back problems in a series of employments involving heavy lifting, and purposely concealed this history in order to secure his final employment. During the final employment, plaintiff's back condition worsened and ultimately precluded further work activity. Under § 431, purposeful concealment of a *disease* would preclude recovery from the employer from whom the disease was concealed. The WCAB specifically found that plaintiff was suffering from a personal injury which was not a disease. The WCAB found plaintiff was disabled under § 301; "plaintiff's subsequent employment with defendant * * * aggravated his pre-existing back condition and injury to the point of total disability on and after his last day of work * * *", *Dressler, supra,* 254.

Under the definition of "disease" framed by the Court of Appeals in the instant case, the finding of the existence of back problems which under the facts of *Dressler* were derived from the effects of continued exposure to inherent elements of the employment (heavy lifting) while employed by both employers would also have required a finding that plaintiff was suffering from a disease. How-

ever, in *Dressler,* the majority of this Court refused to reverse the findings of fact of the WCAB and found ample support in the record for the WCAB's conclusions.

Many types of personal injuries could easily come within the definition of disease employed by the Court of Appeals. Indeed, that definition is so broad that anything other than a single event injury resulting in immediate inability to work could fall within its scope, *i.e.,* any injury aggravated by the duties in subsequent employment. We cannot agree that the legislative intent is consistent with that view.

Clearly "disease" as used under the act is not an easy term to define. It is not defined by the present act,[3] but has most commonly been applied to certain types of injuries common to specific industries.[4] We are in no better position to specifically

[3] In 1937, the following definition, deleted from the present act, was added to Part VII, now Chapter 4, of the Worker's Disability Compensation Act:

"The term 'occupational disease' means a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment." 1937 PA 61, Part VII, § 1.

[4] Typical of the injuries commonly found to be occupational diseases are: silicosis and other dust diseases, see, *e.g., Mercatante v Michigan Steel Casting Co,* 320 Mich 542; 31 NW2d 712 (1948), and *Whitt v Brunswick-Balke-Collender Co,* 1 Mich App 494; 136 NW2d 734 (1965); dermatitis, see, *e.g., English v Lescoa, Inc,* 67 Mich App 403; 241 NW2d 225 (1976); tuberculosis in certain cases, see, *e.g., Vanderbee v Knape & Vogt Mfg Co,* 48 Mich App 488; 210 NW2d 801 (1973); encephalitis caused by benzol poisoning, see, *e.g., Nicholas v St Johns Table Co,* 302 Mich 503; 5 NW2d 442 (1942); and bursitis, see, *e.g., Kalee v Dewey Products Co,* 296 Mich 540; 296 NW 826 (1941).

Larson says of the "typical occupational disease":

"The cause is characteristic harmful conditions of the particular industry. The result is a kind of disability which is not unexpected if work under these conditions continues for a long time. And the development is usually gradual and imperceptible over an extended period." 1B Larson, Workmen's Compensation Law (1978 rev), § 37.20, p 7-6.

But it should be noted he is defining *occupational* disease rather than *disease* as distinguished from disability.

define "occupational disease" without more legislative guidance than was the Court of Appeals. There are certain conclusions we can and do reach, however:

1. Back injuries do not appear to be the type of compensable events normally found to be occupational diseases.[5]

2. The Court of Appeals definition of occupational disease is unacceptable for the above-stated reasons.

3. Although the definition of "disease" under the act is inexact, we cannot say that the WCAB made a definitional error of law in finding that plaintiff was suffering from a disability and not a disease.

4. Whether an injury is an occupational disease is generally a question of fact, *Dressler, supra,* 256, and in this case there is support in the record for the factual findings of the WCAB.[6] Those findings are therefore conclusive. See Const 1963, art 6, § 28.

Under these circumstances we find the WCAB's interpretation of a § 401(c) disability and its application to these facts were not erroneous.

## B. Apportionment

It is asserted that because the WCAB found

---

[5] Our research has disclosed only three prior cases in which a back injury has been termed an occupational disease in Michigan. *Smith v Lawrence Baking Co,* 370 Mich 169; 121 NW2d 684 (1963); *Fields v G M Brass & Aluminum Foundry Co,* 332 Mich 113; 50 NW2d 738 (1952); *Underwood v National Motor Castings Division, Campbell, Wyant & Cannon Foundry Co,* 329 Mich 273; 45 NW2d 286 (1951). As is apparent, the latest of these cases is 15 years old despite the number of back-injury worker's compensation cases that have come through our courts.

[6] There is no clear evidence supporting the view that plaintiff was suffering from a degenerative disc disease during his prior employment. However, even if there were, medical findings regarding the presence of a degenerative disc disease do not require a legal finding of an occupational disease as the term is employed within a statutory context. Further, as indicated *supra,* this case is factually similar to *Dressler, supra,* very recently decided by this Court, in which we affirmed a finding that a back injury was not a disease.

plaintiff's personal injury to be a Chapter 4, § 401(c) injury, the apportionment portion of Chapter 4, MCL 418.435; MSA 17.237(435), must also apply. We disagree.

Despite the few cases in which a back disability was termed a disease, see fn 5, *supra,* our research has disclosed no cases in Michigan which have authorized apportionment in the case of back disability. This lack of precedent was noted and discussed by the WCAB:

"[B]ack disabilities have never been apportioned, even when found compensable by virtue of Part VII (old act) or Chapter 4 (current act). Such failure or tacit refusal represents * * * a conscious policy determination by this board, prior boards and our judicial reviewers on past and present courts, not to treat back conditions as a 'disease' for purposes of Section 435 apportionment." 1977 WCABO 542.

This lack of precedent is, of course, not determinative if apportionment is necessitated by the statute, but we do not believe it is.

Under the act, apportionment is authorized only in the case of a disease (see fn 1, *supra).* The statutory section under which the WCAB awarded compensation, MCL 418.401(c); MSA 17.237(401)(c), refers to both a "disease or disability". We do not find this difference in statutory coverage mere oversight on the part of the Legislature.

In *Skowronski v Ajax Forging,* 54 Mich App 136; 220 NW2d 725 (1974), the Court of Appeals was faced with a challenge to the WCAB's determination that a work-related hearing loss was nonapportionable under MCL 418.435; MSA 17.237(435). That Court stated in regard to § 435:

"This statute is obviously predicated upon the assumption that the employee must be suffering from an occupational disease before the rest of the section is to apply. As has already been stated, the board found that plaintiff's injury was noise-induced. * * * We are bound to agree. We do not believe that a noise-induced hearing loss is an occupational disease within the meaning of the Workmen's Compensation Act of 1969 for compensation purposes. The act does not clearly define what an occupational disease is, but MCLA 418.301(1); MSA 17.237(301)(1) makes an unmistakable distinction between a disease and an injury not attributable to a single event. This distinction is reverberated in MCLA 418.401(c); MSA 17.237(401)(c) * * *. Having gone to such lengths to maintain this distinction throughout the new act, the Legislature was obviously aware of it when it approved an apportionment section that mentioned only disease-caused disabilities. The legislative failure to specifically include the other kinds of disabilities, which had been repeatedly distinguished from diseases, must be viewed as a deliberate exclusion from the coverage of the apportionment section. Therefore, it would be improper to consider plaintiff's injury covered by the apportionment section." *Skowronski, supra,* 141-142.

We agree that the statute does distinguish between personal injuries which are diseases and personal injuries which are disabilities, that apportionment applies only to the former, and that, under competent evidence upon which the WCAB based their unanimous determination, apportionment is not authorized in this case.

### IV. CONCLUSION

The WCAB determined that plaintiff was suffering from a disability under § 401(c) and not a disease, and therefore apportionment was not statutorily authorized. We find competent evidence to support that determination. We, therefore, reverse

the judgment of the Court of Appeals and reinstate the findings of the WCAB.

Reversed and remanded.

BLAIR MOODY, JR., J., concurred with WILLIAMS, J.