FOX v DETROIT PLASTIC MOLDING AND CORPORATE SERVICE

Docket No. 46331. Submitted November 13, 1980, at Detroit.—Decided June 3, 1981. Leave to appeal applied for.

Billie C. Fox was awarded workers' compensation benefits pursuant to a petition he filed with the Bureau of Workmen's Compensation alleging that physical and mental stress on his job caused him to have internal injuries and caused or aggravated a heart condition, angina pectoris, and myocardial infarctions. The Workers' Compensation Appeal Board affirmed the decision of the administrative law judge, awarding Fox the benefits. Detroit Plastic Molding and Corporate Service, Fox's employer, appeals, alleging that (1) arteriosclerosis is an ordinary disease of life which is not compensable, and (2) if aggravation of Fox's atherosclerotic heart condition is compensable, it is only compensable as an occupational disease, and as such, the respondent contends that it is entitled to apportion benefits between Fox's occupationally-related heart condition and his nonoccupational diabetes and nonoccupational hypertension. *Held:*

1. Given the apparent divergence of medical opinion concerning whether occupational stress aggravates arteriosclerosis, this matter is subject to reasonable dispute and, as such, is not a fact amenable to judicial notice pursuant to the Michigan Rules of Evidence. There was evidence in this case from which the Board could support its judgment that Fox's atherosclerotic heart condition was aggravated by his employment.

2. Fox may recover compensation. The Board has made a factual finding, supported in the record, that his atherosclerotic heart condition was aggravated by occupational stress to the

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 747.
  82 Am Jur 2d, Workmen's Compensation §§ 296, 298.
[2] 82 Am Jur 2d, Workmen's Compensation § 552.
[3] 5 Am Jur 2d, Appeal and Error § 747.
[4] 82 Am Jur 2d, Workmen's Compensation §§ 630, 631, 634.
[5] 81 Am Jur 2d, Workmen's Compensation § 228.
[6, 7] 81 Am Jur 2d, Workmen's Compensation § 226.
[8] 82 Am Jur 2d, Workmen's Compensation § 300.

point of becoming debilitating. The manifestation of the disease which results in disability constitutes a personal injury under the Worker's Disability Compensation Act.

3. Defendant argued that plaintiff's atherosclerosis was aggravated by other nonoccupational and noncompensable diseases and conditions and that if plaintiff's condition is compensable at all, benefits should be apportioned among the various aggravating factors. The Workers' Compensation Appeal Board found plaintiff's atherosclerosis to be an injury and not an occupational disease under the Worker's Disability Compensation Act and as such the defendant is not entitled to apportionment of benefits between the plaintiff's occupationally-related heart condition and his nonoccupational diabetes and nonoccupational hypertension.

Affirmed.

1. WORKERS' COMPENSATION — ARTERIOSCLEROSIS.
    The Court of Appeals is not required to follow the dicta of the Supreme Court indicating that arteriosclerosis is an ordinary disease of life which is not caused by work or aggravated by the stress of work.

2. WORKERS' COMPENSATION — FINDINGS OF FACT — FRAUD.
    Findings of fact in workers' compensation proceedings are conclusive in the absence of fraud (Const 1963, art 6, § 28).

3. APPEAL — DICTA FROM A HIGHER COURT.
    The Court of Appeals, in a normal case, should resolve disputed issues in accordance with the dicta from a higher court where applicable.

4. WORKERS' COMPENSATION — APPEAL.
    The Court of Appeals may reverse a decision of the Workers' Compensation Appeal Board only when convinced that there is no evidence to support that judgment.

5. WORKERS' COMPENSATION — ELIGIBILITY FOR BENEFITS.
    Lack of knowledge of the time or date of the injury resulting in a disability is not fatal to recovery of workers' compensation benefits.

6. WORKERS' COMPENSATION — SINGLE-EVENT INJURY.
    An injury not attributable to a single event may be compensable under the workers' compensation law.

7. Workers' Compensation — Eligibility for Benefits.
   An injury need not be the result of a traumatic event to be compensable under the workers' compensation law.

8. Workers' Compensation — Heart Disease — Personal Injury.
   Occupational stress resulting in a heart attack or occupational stress aggravating an existing heart disease to the point of being disabling may constitute a personal injury for workers' compensation purposes.

*Lopatin, Miller, Freedman, Bluestone, Erlich & Rosen* (by *Monica Farris Linkner*), for plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen* (by *James R. Geroux* and *Jonathan T. Kopit*), for defendant.

Before: Bronson, P.J., and J. H. Gillis and Cynar, JJ.

Bronson, P.J. Defendant appeals by leave granted from a judgment of the Workers' Compensation Appeal Board (WCAB or Board) affirming the decision of the administrative law judge granting plaintiff compensation benefits.

On September 18, 1975, plaintiff filed a petition for workers' compensation alleging that physical and mental stress on his job caused him to have internal injuries and caused or aggravated a heart condition, angina pectoris, and myocardial infarctions. A hearing was held before an administrative law judge on October 26, 1976.

Plaintiff testified that his first position with defendant was that of a paint mixer. This job entailed some heavy lifting including moving 55-gallon drums that could weigh anywhere from 300 to 400 pounds.

Plaintiff was eventually promoted to assistant decorating foreman. This position required him to oversee all or part of the work of some 300 em-

ployees. He worked some ten hours a day, five days a week. Some weeks he also worked on Saturday. It was plaintiff's responsibility to ensure that production schedules were met. After approximately three years, plaintiff was transferred to the midnight shift and became foreman over eight other employees. On this shift, he was required to do some production and painting work himself.

In mid-1972, plaintiff was transferred back to the warehouse and made a flow coater. In the flow coating department, a base is placed onto raw parts before the parts go into metalizing. This job required a lot of manual labor and "the fumes were terrible". Plaintiff started experiencing pain in his left arm and was diagnosed as having bursitis.

Immediately after these problems, plaintiff became a production control supervisor. He testified that this job was very stressful. He found particularly unnerving his responsibility for having to deal with telephone calls from purchasers complaining that their parts had not been shipped. Plaintiff testified that his employer told him to tell lies with respect to why their parts had not been shipped and when they might get them. While working in production control, plaintiff worked ten-hour shifts Monday through Friday and half a day on Saturday.

Plaintiff testified that he suffered his first heart attack on Saturday morning, February 1, 1973, while at work. Plaintiff was out of work until July, 1973, when he returned to his job in production control. Thereafter, he suffered a second heart attack in February, 1974. Plaintiff returned to work in September, 1974, and continued to work 10 to 11 hours a day, five days a week as well as working on Saturdays.

Plaintiff was transferred to production control in a new plant the company had purchased in Sterling Heights. Although smaller, this plant was experiencing difficulties and plaintiff was required to work all night on more than one occasion to ensure compliance with production schedules. In December, 1974, plaintiff stated that he suffered another heart attack while at the plant. He was hospitalized for two more weeks.

When plaintiff returned to work, he was placed in charge of a Zenith television project at defendant's Fifteen Mile plant. This plant was experiencing serious labor difficulties, and defendant had recently discharged the supervisor and all of the hot stamping workers there. As production foreman, plaintiff had 50 to 70 people working under his direction. In March, 1975, plaintiff testified that he again suffered a heart attack. Plaintiff returned to work in July, 1975. While at work one morning, he sat down at a cafeteria table and passed out. Medical personnel told him that he had not experienced another heart attack, but, rather, was just having problems with his "nerves". Following this incident, defendant was laid off. Medical testimony will be discussed below in Part I of this opinion.

I

Plaintiff was awarded compensation benefits on a 2-to-1 vote of the WCAB. Each of the Board members wrote a separate opinion in this matter. The lead opinion by member Oldstrom rejected as incompetent plaintiff's testimony that he had experienced "heart attacks" because he was not a

doctor.[1] Nonetheless, this opinion found that "employment stress was a factor in [plaintiff's] atherosclerotic heart disease" and upheld the administrative law judge's granting of compensation benefits. WCAB member Miller's concurring opinion considered plaintiff's testimony concerning heart attack competent, but did not indicate what weight he would give it. Mr. Miller also believed that stress at work was more significant to the ultimate heart-related disability than did Mr. Oldstrom. Chairman Gillman in dissent concluded that plaintiff's lay testimony was competent but that he had not established by a preponderance of the evidence that the atherosclerotic condition was work-related. All three opinions by the WCAB, however, impliedly proceeded on the assumption that the arteriosclerosis could be compensable in a given case.

Defendant first contends that arteriosclerosis is an ordinary disease of life which is not compensable. MCL 418.401(c); MSA 17.237(401)(c). The company relies on the following excerpt from *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 116-118; 274 NW2d 411 (1979):

"Arteriosclerosis is an ordinary disease of life which is not caused by work or aggravated by the stress of work. However, stress that would not adversely affect a person who does not have arteriosclerosis may cause a person who has that disease to have a heart attack.

"The WCAB found that Fiszer and Hannula had not suffered heart damage. Those findings are supported in the evidence. Therefore, whatever the stress of the jobs, there was no injury. Since stress does not aggravate arteriosclerosis, the WCAB decisions denying them com-

---

[1] This was error. The fact that plaintiff was not a doctor did not render his testimony concerning heart attacks incompetent. See, *Kostamo v Marquette Iron Mining Co,* 405 Mich 105, 120, 131-132; 274 NW2d 411 (1979).

pensation must be affirmed. Although there is a causal relationship between the underlying disability, arteriosclerosis, and Fiszer's and Hannula's inability to continue working, that disability was not caused and could not have been aggravated by their employment." (Footnotes omitted.)

The above excerpt certainly seems to indicate that the Supreme Court is taking judicial notice that arteriosclerosis is not aggravated by stress. However, we reject this view as will be detailed below. The quotation constitutes dicta which we are not bound to follow. In the actions brought by Fiszer and Hannula upon which this dicta is based, both men argued that their arteriosclerosis was a work-related disability. It was unnecessary for the Court to consider whether arteriosclerosis could be aggravated by stress to affirm the WCAB determinations in these cases. By Const 1963, art 6, § 28, findings of fact in workers' compensation proceedings are conclusive in the absence of fraud. As such, the Court in the Fiszer and Hannula matters need only have upheld the WCAB findings of fact to affirm.

Nonetheless, the fact that the excerpt quoted above constitutes mere dicta does not mean that we should refuse to follow it in rendering our decision. Indeed, in the normal case, we should resolve disputed issues in accordance with the dicta from a higher court where applicable. Simply because language in an opinion is unnecessary to the ultimate resolution of that case is no reason not to give it effect. The dicta still express the views of the higher court. It would be intellectually dishonest to reject dicta in deciding a case in which we were convinced the higher court would give effect to said dicta merely because it is not technically binding.

It is thus our duty to attempt to ascertain whether the four Supreme Court Justices who concurred in the majority opinion in *Kostamo* really meant that as a matter of law arteriosclerosis could not be aggravated by the stress of work. Whether stress in general, and work-related stress in particular, can aggravate arteriosclerosis to the point where the disease becomes disabling is apparently a matter of considerable medical debate. In this case, for instance, Dr. Helen Winkler, a board-certified internist who has had articles published in her field of expertise, categorically stated:

"This man's occupational stresses aggravated his coronary atherosclerosis. His occupational stresses precipitated recurrent episodes of myocardial hypoxia resulting in angina pectoris and myocardial infarction. His occupational stresses aggravated his hypertension and chronic anxiety."

Similarly, Dr. Donald Overy, board-certified in internal medicine, stated that he was sure that stress at work "is a factor in this disease". Dr. Overy, however, indicated that stress was not the "precipitating" or "causative" factor in the atherosclerotic heart condition resulting in plaintiff's disability. His opinion was that the occupational factors were insignificant given the fact that plaintiff was "a walking casebook of risk factors" including obesity, smoking, mild diabetes, hypertension, and a family history of heart disease. Nonetheless, Dr. Overy's testimony indicates that work-related stress *can aggravate* arteriosclerosis. A third doctor, Joseph Kopmeyer, also a board-certified internist, testified that personal family matters were "of relatively much more importance in the total process of any possible worsening of his coronary vascular disorder than would be the

possible occupational factors". Implicit in this testimony is the acceptance of the idea that employment-related stress can aggravate arteriosclerosis.

Given the apparent divergence of medical opinion concerning whether occupational stress aggravates arteriosclerosis, this matter is subject to reasonable dispute and, as such, is not a fact amenable to judicial notice pursuant to MRE 201(b). Consequently, we do not follow the dicta in *Kostamo* since it is, in effect, judicial notice of disputed factual matter.[2]

We still must determine whether there is evidence to support the WCAB's judgment that in this case the atherosclerotic heart condition was aggravated by the employment. This Court may reverse the Board's decision only when convinced that there is no evidence to support that judgment. *Kostamo, supra,* 135-136, *Mansfield v Enterprise Brass Work Corp,* 97 Mich App 736, 743-744; 295 NW2d 851 (1980), and cases cited therein. Here,

---

[2] It may be that in a technical sense Justice Levin is correct in stating that arteriosclerosis cannot be aggravated by the stress of work. In the instant case, the doctors actually diagnosed plaintiff as having atherosclerosis. Some authorities simply state that atherosclerosis is a form of arteriosclerosis marked by the formation of atheromas or athermatous plaques. 1 Schmidt, Attorneys' Dictionary of Medicine, pp A-296, A-324; 11 Kalisch & Williams, Courtroom Medicine, Chest, Heart, and Lungs, § 13.00, pp 13-2—13-3. Other authorities, however, refer to atherosclerosis and arteriosclerosis as two distinct conditions, stating that atherosclerosis may be aggravated by hypertension, but that arteriosclerosis is a product of aging, characterized by a hardening or loss of elasticity in the media or middle tissue layer in the arteries. 3B Gordy-Gray, Attorneys' Textbook of Medicine, § 91.01, pp 91-4—91-5. Very probably Justice Levin and the *Kostamo* majority intended the more narrow meaning of arteriosclerosis. However, large numbers of doctors apparently do not use the term so precisely. In this case, for instance, although the doctors all diagnosed plaintiff as having atherosclerosis, in their testimony each referred to plaintiff's arteriosclerosis as the equivalent of his diagnosed condition. Thus, even if the *Kostamo* majority is literally correct, we decline to follow its dicta since we do not believe a plaintiff's claim for compensation should turn upon the degree of exactitude with which the testifying doctors use the medical jargon.

the Board chose to accept the testimony of Dr. Winkler which affirmatively tied the aggravation of the atherosclerotic heart disease to occupational stress. While it is true that Drs. Overy and Kopmeyer believed that the occupational factors were of little significance to the disability, both indicated that stress at work was a factor. There was evidence, then, from which the WCAB could support its judgment.[3]

## II

Defendant next contends that if aggravation of plaintiff's atherosclerotic heart condition is compensable, it is only compensable as an occupational disease. As such, defendant contends that it is entitled to apportion benefits between plaintiff's "occupationally related heart condition" and his "nonoccupational diabetes and nonoccupational hypertension" pursuant to MCL 418.431; MSA 17.237(431). The question we are called upon to resolve, then, is: where the WCAB finds that occupational stress aggravated the coronary condition to the point of disability but where plaintiff has failed to establish that a heart attack precipitated the disability, is compensation awardable pursuant to MCL 418.301; MSA 17.237(301) (Chapter 3) or MCL 418.401; MSA 17.237(401) (Chapter 4)? If the

---

[3] In *Kostamo, supra,* 128, fn 15, the Supreme Court quoted with approval from McNiece, Heart Disease and the Law (Englewood Cliffs, NJ: Prentice-Hall, Inc, 1961), on the interplay between medical and legal causation. We reuse that quote here because it is particularly germane in this matter:

"[T]he courts are not talking of causation in an etiological sense but rather of aggravation, acceleration, or 'lighting up.' Unlike the medical profession, the courts are not concerned with the degree of impairment which may lurk beneath the surface appearances of a man. Their inquiry is not directed to the undoubted existence of the chronic and longstanding features of cardiac impairments, but rather to the fact that the work contributed, at least in some slight measure, to bring those impairments to light."

coronary related disability is compensable as a Chapter 4 disease or disability rather than a Chapter 3 personal injury, apportionment of benefits is required.

The WCAB specifically rejected defendant's contention that the atherosclerosis constituted a Chapter 4 occupational disease. Rather, it ruled that plaintiff suffered from an injury under Chapter 3. Defendant contends that this conclusion is wrong, asserting that Chapter 3 only applies to disabilities arising from: (1) a single event injury, (2) a single event injury aggravated by subsequent employment or (3) a series of traumatic events. We reject this argument.

MCL 418.301(1); MSA 17.237(301)(1), provides:

"An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is subject to the provisions of this act, at the time of such injury, shall be paid compensation in the manner and to the extent provided in this act, or in case of his death resulting from such injuries the compensation shall be paid to his dependents as defined in this act. *Time of injury or date of injury as used in this act in the case of a disease or in the case of an injury not attributable to a single event shall be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death.*" (Emphasis added.)

The emphasized portion of the provision indicates that lack of knowledge of the time or date of the injury resulting in the disability is not fatal to recovery. Furthermore, it provides that an injury not attributable to a single event may be compensable. The provision does not impose any requirement that the events resulting in the disability be traumatic (as used here, meaning caused by some

physical blow or contact) to the exclusion of psychological or emotional events.

The idea that the injury must be the result of a traumatic event is contrary to the state of the law as it now exists. In *Carter v General Motors Corp*, 361 Mich 577; 106 NW2d 105 (1960), the Supreme Court held that a psychosis resulting from the emotional pressures experienced by plaintiff daily on his job was a compensable personal injury within the meaning of the precursor to MCL 418.301(1); MSA 17.237(301)(1).[4] In *Carter*, the claimant was disabled by "paranoid schizophrenia" not manifesting itself in a physical injury. Here, plaintiff actually was physically disabled, and the WCAB found that this disability was caused in part by the emotional pressures plaintiff was subjected to on the job. In both *Carter* and the instant case, the plaintiffs suffered from preexisting infirmities—Carter from "pre-existing latent mental disturbances" and plaintiff Fox from preexisting arteriosclerosis. We see no grounds in the Worker's Disability Compensation Act allowing us to distinguish emotional pressures resulting in disabling mental illness and emotional pressures resulting in a disabling atherosclerotic heart condition.

The Supreme Court has recently considered again the status of mental conditions resulting in disabilities for purposes of the Worker's Disability Compensation Act in *Deziel v Difco Laboratories, Inc (After Remand)*, 403 Mich 1; 268 NW2d 1 (1978). The majority opinion specifically recognized as a compensable Chapter 3 disability a physical injury resulting from "a mental stimulus". *Id.*, 22. This is basically the situation we are presented with. Plaintiff Fox's work-related pressures consti-

---

[4] MCL 412.1; MSA 17.151.

tuted the "mental stimulus" which aggravated a preexisting coronary condition resulting in a physical injury. It does not matter that the mental stimulus, itself, was insufficient to render plaintiff disabled. Its interaction with the underlying physical condition was found by the WCAB to have resulted in a Chapter 3 personal injury. Defendant makes much of the fact that any injury suffered by plaintiff was ultimately the result of heart disease aggravated by employment factors. However, this is no different from Carter's injury which was ultimately the result of mental disease aggravated by employment factors.[5]

Defendant also places much reliance on *Derwinski v Eureka Tire Co,* 407 Mich 469; 286 NW2d 672 (1979). The question in *Derwinski* was whether plaintiff's last employer was entitled to apportionment of benefits pursuant to MCL 418.435; MSA 17.237(435) with plaintiff's previous employer where plaintiff was disabled due to aggravation of preexisting degenerative disc disease. The Court answered affirmatively as the WCAB found that the disablement was the result of repeated lifting duties required by both employers.

Defendant points to the definition of disease used in *Derwinski, supra,* 482-483, and argues that since plaintiff's atherosclerosis falls within this definition, apportionment is required pursuant to MCL 418.431; MSA 17.237(431). We disagree. There are at least two flaws with defendant's analysis.

The Court in *Derwinski* specifically justified the apportionment in that case on the WCAB's acceptance of the referee's factual conclusion that the

---

[5] Indeed, it is no different than any of the plaintiffs' injuries in *Kostamo* who suffered injuries which were ultimately the result of heart disease.

disability was the result of heavy lifting duties imposed by both employers. The Court in *Derwinski* specifically distinguished *Dressler v Grand Rapids Die Casting Corp,* 402 Mich 243; 262 NW2d 629 (1978), which also involved back problems, on the basis that the WCAB's conclusion there—that plaintiff's disability was the result of a single-event injury and subsequent aggravations thereof—was a binding factual conclusion. In the case at bar, the Board's finding was that plaintiff suffered from a Chapter 3 injury.

The second flaw in defendant's argument is that the atherosclerotic condition suffered by plaintiff is not "characteristic of and peculiar to the business of the employer" within the meaning of MCL 418.401(c); MSA 17.237(401)(c). As the WCAB noted, heart disease is very common and cuts across all walks of life. In *Mills v Detroit Tuberculosis Sanitarium,* 323 Mich 200; 35 NW2d 239 (1948), the Supreme Court made it clear that an ordinary disease of life is compensable as an occupational disease where exposure to the disease is increased due to the inherent characteristics and peculiarities of the employment. Thus, the claimant in *Mills* who suffered from pulmonary tuberculosis was held to have a compensable disease since his employment exposed him to a far greater risk of contracting the malady than is common for the public generally. *Mills, supra,* 208-209. Every disease is not an occupational disease merely because it was aggravated by and became disabling as a consequence of the employment.

*Mills, supra,* 207-208, makes it clear that the Legislature amended the Worker's Disability Compensation Act to allow for recovery for an occupational disease arising out of and in the course of the employment. The purpose of the amendment

was to broaden the scope of compensable work-related disabilities. Prior to the amendment, a formerly healthy worker could obtain no benefits where he became diseased, as opposed to injured, as a consequence of the employment. The purpose of the amendment reveals that Chapter 4 has no applicability to this case. Nobody contends that plaintiff's arteriosclerosis was caused by the employment as the worker in *Mills* argued that his tuberculosis was caused by his employment. Rather, as the WCAB found, plaintiff already had coronary disease which was aggravated by the employment to the point of constituting a disabling injury. In *Kostamo, supra,* 119-120, the Supreme Court held that a worker who suffered a heart attack because of occupational stress may be found to have a compensable disability even in the face of medical testimony that because of preexisting heart problems, the attack would some day have been "inevitable". In our opinion, whether plaintiff suffered a Chapter 3 personal injury does not turn on whether the occupational stress aggravating the underlying arteriosclerosis ultimately manifested itself in a heart attack or merely manifested itself in an aggravation of the arteriosclerotic condition to the point of disability. In either case, the disability arises fundamentally from the underlying heart disease and not the work-aggravated manifestation of the disease. The ultimate question is: where the WCAB has made a factual finding, supported in the record, that the atherosclerotic heart condition was aggravated by occupational stress to the point of becoming debilitating, may plaintiff recover compensation for a personal injury? In our opinion this inquiry must be answered affirmatively. The Supreme Court held in *Kostamo* that where the occupational stress results in a heart attack, a resulting disability is

compensable. See, also, *Zaremba v Chrysler Corp,* 377 Mich 226; 139 NW2d 745 (1966). If the occupational stress aggravates the heart disease to the point of being disabling, the fact that the manifestation of the stress was not so dramatic as a heart attack[6] makes the disability no less compensable. In either case, the manifestation of the disease which results in disability constitutes a personal injury for purposes of Chapter 3.

Affirmed.

---

[6] Were we to hold that the disability, here, was an apportionable occupational disease, we would have to remand to the WCAB with instructions to consider plaintiff's testimony about heart attacks and for further factfinding. Upon consideration of plaintiff's testimony, the WCAB might, in fact, conclude that the work stress resulted in a disabling heart attack. See fn 1, *supra.*